14 F.3d 601
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Larry U. JOSEY; Harry H. Lloyd; Robert Gibson, Plaintiffs-Appellees,
v.
William SALISBURY, Leonard Riccinto; the City of Detroit,
Defendants-Appellants.
 No. 92-2093.
 United States Court of Appeals, Sixth Circuit.
 Nov. 18, 1993.
 
 Before: MARTIN and SUHRHEINRICH, Circuit Judges; and WELLFORD, Senior Circuit Judge.
 HARRY W. WELLFORD, Senior Circuit Judge.
 
 
 1
 The defendants, police officers, claimed to have seen the plaintiffs involved in selling drugs and arrested them for that reason. Based on their testimony, a magistrate judge found that probable cause existed and the plaintiffs' suppression motions were denied. The state court trial judge presiding over one plaintiff's criminal trial directed a verdict for him because based on a jury view of the scene from the officer's claimed vantage point, the judge believed that the officer could not have actually witnessed the drug buys. Thus acquitted, the criminal defendants filed a Sec. 1983 action alleging that the officers prevaricated to support probable cause, and asserted against them and the City of Detroit claims of false arrest and malicious prosecution. The defendant officers claimed qualified immunity, which the district court denied.
 
 
 2
 The defendants in this action, William Salisbury and Leonard Riccinto, were plain clothed Detroit police officers investigating drug trafficking activity. On August 23, 1990, Riccinto, who was perched on a nearby rooftop, allegedly saw the three plaintiffs involved in multiple drug transactions. Without obtaining a search warrant, Riccinto and his partner, Salisbury, arrested the three plaintiffs. A subsequent search uncovered automatic weapons and cocaine at the scene.
 
 
 3
 During a preliminary hearing, the criminal defendants alleged that the officers violated their Fourth Amendment rights by arresting and searching them without probable cause. Riccinto testified that he had personally seen drug transactions taking place. Defense counsel began to attack Riccinto's testimony by questioning him about his view of the scene (the defendant contended that Riccinto could not possibly have seen anything from his vantage point), but the magistrate stifled this line of questioning on the grounds that exposing the officer's vantage point would thwart ongoing surveillance allegedly being conducted from this rooftop. Without considering the opposing evidence regarding Riccinto's challenged view, the magistrate recommended that the suppression motion be denied, and bound the criminal defendants over for trial in state court.
 
 
 4
 At trial, the jury acquitted defendants Lloyd and Gibson, but could not reach a result regarding Josey. The trial judge in Josey's second trial granted a directed verdict in his favor, because he believed that Riccinto could not have seen the drug buy from his perch, as he had testified.
 
 
 5
 All three criminal defendants, having won acquittals, brought separate Sec. 1983 actions against the officers and the City. The civil defendants removed the three Sec. 1983 actions to federal court, where they were consolidated.
 
 
 6
 The defendants moved for summary judgment based on qualified immunity. The district judge denied the motion, apparently finding that the qualified immunity defense would not apply if Riccinto had in fact lied about seeing the transaction. The district court found a genuine factual dispute regarding Riccinto's ability to have seen a drug buy from his station. The defendants contend that the plaintiffs have produced no evidence that would qualify under Rule 56(c) to show that Riccinto deliberately misrepresented the facts.
 
 
 7
 We now consider the situation of each of the parties separately.
 
 I. PLAINTIFFS
 
 8
 Plaintiffs Lloyd and Gibson were acquitted by the jury at trial, but the jury could not agree as to Josey. At least one (or likely more) jurors were prepared to find Josey guilty as charged beyond a reasonable doubt after argument about the accuracy of Riccinto's testimony. Josey was charged with possession of a semi-automatic rifle and he unsuccessfully attempted to flee from the scene. Josey may be in a different situation from the other plaintiffs because of these facts,[1] but we find no basis for estoppel by reason of the magistrate judge's actions in finding probable cause based upon the Riccinto testimony. None of the plaintiffs are estopped from pursuing these claims by reason of the formal actions taken to bring charges against them.
 
 II. DEFENDANTS
 
 9
 Relying on Coogan v. City of Wixom, 820 F.2d 170 (6th Cir.1987), the defendants contend that the issue of whether probable cause existed was determined in the preliminary hearing, and that, pursuant to the doctrine of collateral estoppel, this court should afford the magistrate's finding of probable cause preclusive effect. Federal courts apply state collateral estoppel law when determining whether a state court judicial determination has preclusive effect in a particular Sec. 1983 action. Haring v. Prosise, 462 U.S. 306, 313 (1983). In Michigan, collateral estoppel precludes relitigating an issue in a subsequent cause of action if the parties are the same, and the issue was actually litigated, and was necessarily determined in the first proceeding. People v. Gates, 452 N.W.2d 627, 630 (Mich.), cert. denied, 497 U.S. 1004 (1990). Preclusive effect is unwarranted unless the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding. Id. at 631.
 
 
 10
 For two reasons, we decline to afford the state court's determination of probable cause preclusive effect. First, the identity of issues requirement is not satisfied here. Essentially, the plaintiffs argue that their civil rights were violated because the officers knowingly supplied the magistrate with a false version of the facts. In this action, the core issue is whether the officers misstated the facts to establish probable cause: at the preliminary hearing, the central question was whether there was probable cause. While the two inquiries are clearly related, they are not identical.[2] Consequently, the identity of issues required for preclusive effect is absent here. See also, Jones v. City of Chicago, 856 F.2d 985, 994 (7th Cir.1988) (holding that the context of constitutional torts, police officers who have lied to higher law enforcement officials "cannot hide behind the officials whom they have defrauded").
 
 
 11
 Second, the condition that the issue be fully and fairly litigated in the initial proceeding is also lacking. Although probable cause determinations in Michigan are adversary proceedings, the magistrate refused to allow cross examination regarding Riccinto's vantage point for fear of revealing the police surveillance position. Because the magistrate foreclosed cross examination on this crucial issue, the question of probable cause was not "fully and fairly litigated" as required for the application of collateral estoppel. For both of these reasons, we decline to afford preclusive effect to the initial determination of probable cause.
 
 A. RICCINTO
 
 12
 Based upon what has been already stated, the case against the plaintiffs rested upon the reliability of Riccinto's testimony that he personally observed the drug transactions and weapons at the scene before Josey, Lloyd and Gibson were arrested. There is a genuine issue of material fact about the reliability and veracity of that testimony as determined by the district court. We find no error in this determination, but we emphasize that further proof on the merits could vindicate officer Riccinto.
 
 B. WILLIAM SALISBURY
 
 13
 Josey sued Salisbury, as a Detroit police officer, for wrongfully arresting him knowing that he had not committed a crime in his presence, and conspiring to make out false arrest reports, causing him to be falsely imprisoned and maliciously prosecuted. Josey added a libel and slander count and a claim of violation of his civil rights. The same attorney filed similar charges for Lloyd and Gibson against Salisbury. Testimony in the record, however, clearly indicates that Riccinto and his partner, Salisbury, were patrolling and surveilling at the pertinent times in an area of "high narcotics trafficking." Only Riccinto testified that he observed, with binoculars for fifteen minutes, Lloyd engaged in drug activities, and Josey and Gibson "covering him" at the time with firearms. Riccinto testified that he "left his cover; ran to the squad car, and informed Salisbury," giving him a description of what he, Riccinto, had just purportedly observed.
 
 
 14
 The testimony from Riccinto followed that they both then "proceeded to that location with guns drawn." Riccinto arrested Lloyd and Gibson, and Salisbury pursued and arrested Josey. Riccinto added that Salisbury found and seized crack cocaine at the site. Riccinto's testimony in this regard is supported by a preliminary complaint record signed by Salisbury, who indicated that he was advised by Riccinto of what he had purportedly just observed. Another officer also signed the report.
 
 
 15
 Riccinto's preliminary report supported his testimony, and went into further detail concerning his alleged observations and the arrest of the three plaintiffs together with confiscation of contraband drugs, weapons and money. The investigator's report also supported Riccinto's testimony, particularly that it was he alone who initially observed and reported the illegal activity. An affidavit by one of the plaintiff's attorneys indicated that "Riccinto [primarily] change [sic] his testimony between the evidentiary hearing and trial one and two." He also indicated, by hearsay, that the state judge involved believed that "the Defendants had lied while testifying," and that "the testimony of the officers at the preliminary examination was essentially the same as the PCR [preliminary complaint report]." The plaintiff's attorney describes the sequence of events in the appellate brief:
 
 
 16
 Officer Riccinto claimed to have observed three separate transactions that appeared to be the sale of narcotics near the garage located at 14200 Parkgrove in the City of Detroit.
 
 
 17
 After observing these transactions, he met with his partner, Salisbury in the police car. The officers then pulled up to the location and arrested the Plaintiffs-Appellees.
 
 
 18
 The examining magistrate refused to have Riccinto at the examination disclose the location from which the view of the alleged narcotic activity took place.
 
 
 19
 A careful examination of the record submitted indicates that Salisbury clearly acted upon the report and advice of his partner. He did not purport to witness the drug deals or the possession of the weapons in furthering and protecting the drug sales. Upon his arrival on the scene, Riccinto's account was borne out by what Salisbury saw: the presence of the defendants, weapons, and Josey's flight. He discovered evidence of crack cocaine and money that clearly supported Riccinto's report to him.[3]
 
 
 20
 We find no basis for denying Salisbury's claim of qualified immunity under these circumstances. Accordingly, we REVERSE the district court's denial of Salisbury's motion for summary judgment.
 
 C. CITY OF DETROIT
 
 21
 The City of Detroit is not before us on any claim of good faith or qualified immunity as are the individual defendants in this appeal. The City of Detroit does claim immunity from tort liability in this case under Michigan law, and also claims non-liability based upon Monell v. Dept. of Public Health, 436 U.S. 658 (1978). We do not address these claims except to note that if the plaintiffs' claim against the City of Detroit is based upon respondeat superior, then Monell provides a proper basis for judgment in the City of Detroit's favor. See also Jett v. Dallas Independent School District, 491 U.S. 701, 731 (1989).
 
 
 22
 In sum, we AFFIRM the district court's denial of summary judgment on the issue of qualified immunity as to the defendant Riccinto. We REVERSE the district court on the issue of qualified immunity as to the defendant Salisbury, and direct that judgment be granted Salisbury on all of the plaintiffs' claims.
 
 
 
 [1]
 At the hearing before the magistrate judge who found probable cause for drug and felony firearm charges, it was pointed out that "Josey [subject to a parole detainer] would be held no matter what we do with regard to his bond."
 
 
 [2]
 See, for example, Schertz v. Waupaca County, 875 F.2d 578, 581 (7th Cir.1989), in which the court recognized the difference between challenging the integrity, rather than the sufficiency of the evidence presented. In Schertz, the court denied preclusive effect to a probable cause determination where the plaintiff in the Sec. 1983 action alleged that the investigation that uncovered incriminating evidence was conducted in bad faith, rather than that the evidence supporting probable cause was insufficient as a matter of law. Id
 
 
 [3]
 The plaintiffs have not attempted to show that it was unreasonable for Salisbury to rely upon the apparently contemporaneous report of his experienced partner surveilling in an active drug area