RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0411P (6th Cir.)
File Name: 02a0411p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

BONNIE LEE HINCHMAN,
        _Plaintiff-Appellant,_

_v._

EDWIN L. MOORE JR. and
ROBERT A. DOMBROWSKI,
        _Defendants-Appellees._

Nos. 00-2457;
01-2446

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-73433—Robert H. Cleland, District Judge.

Argued and Submitted: October 30, 2002

Decided and Filed: December 2, 2002

Before: MARTIN, Chief Circuit Judge; NELSON and
GILMAN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Marcelyn A. Stepanski, JOHNSON, ROSATI, LABARGE, ASELTYNE & FIELD, Farmington Hills, Michigan, for Appellees. **ON BRIEF:** Victoria Eva Abdella, Franklin, Michigan, Marvin L. Berris, Bingham Farms, Michigan, for Appellant. Marcelyn A. Stepanski, S. Randall Field, JOHNSON, ROSATI, LABARGE, ASELTYNE & FIELD, Farmington Hills, Michigan, for Appellees.

1

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge. Bonnie Lee Hinchman, while driving her car in Ann Arbor, Michigan, was pulled over and arrested by a Michigan state trooper after the trooper received a radio dispatch that Hinchman had assaulted a Livingston County Sheriff's Department officer. Hinchman was bound over for trial following a preliminary hearing before a state court judge, who found probable cause for her arrest on a charge of felonious assault. After being acquitted following a jury trial, Hinchman filed the present lawsuit against Livingston County Sheriff's Department Detectives Robert Dombrowski and Edwin Moore Jr. She contended, among other things, that the defendants had fabricated the facts to establish probable cause. The district court granted the defendants' motion for summary judgment and also granted in part and denied in part the defendants' subsequent motion for costs and attorney fees. Hinchman now appeals, arguing that the district court erred in granting both motions. For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

### A.  Factual background

On June 5, 1997, the body of Thomas Margellar Jr. was discovered by passing motorists in Livingston County, Michigan. Linda Margellar, the decedent's former wife, agreed to assist the Livingston County Sheriff's Department with the investigation into Thomas's death. When asked at the Sheriff's Department if she wished to contact anyone for emotional support, Linda told Detective Dombrowski that she would like to call her "best friend" Hinchman. Linda slept at Hinchman's apartment throughout the investigation.

A search of Linda's residence by Sheriff's Department officers revealed that Thomas was assaulted in the garage. Linda subsequently admitted that she and her brother killed Thomas. Due to the close relationship between Hinchman and Linda and the fact that Linda slept at Hinchman's apartment immediately following the murder, Dombrowski called Hinchman to arrange for an interview. Unable to set up a time to interview Hinchman, Dombrowski and Moore drove to Hinchman's apartment, where they talked with Hinchman through her closed front door. The officers left the vicinity after Hinchman advised them that she did not wish to speak with them.

Dombrowski and Moore then discussed the situation over the police radio with another Livingston County Sheriff's Department detective, who advised them to return to Hinchman's apartment complex and await the arrival of an investigative subpoena that was being prepared for service on Hinchman by the Livingston County Prosecutor's Office. When they arrived at the apartment complex, they saw Hinchman exit her apartment carrying a laundry basket filled with clothes. She quickened her pace toward her car as Dombrowski and Moore approached her. After placing the basket in the car, she entered and closed the door.

Dombrowski asked Hinchman to stay, explaining to her that she would be served with an investigative subpoena shortly. Hinchman replied that she was not willing to talk with the officers at that time, and she started her car's engine. From here, the parties' versions of the facts differ. According to Hinchman, Moore was "holding the car" with his hands on the trunk, and, upon her telling Moore that she was leaving, Moore moved aside. She then backed her car up—keeping Moore and Dombrowski in sight—and left the parking lot. Hinchman maintains that she never struck Moore with her car.

Moore, on the other hand, contends that Hinchman "placed the car in reverse and looked straight up" without warning him or otherwise giving him an opportunity to get out of the

way of the car. He claims that she proceeded to hit him with her car, which "knocked [him] off balance" and forced Moore to grab the back of the car to prevent him from being dragged underneath. Hinchman then allegedly stopped the car, looked back at Moore, and continued backing up, striking Moore once again. Although the officers demanded that Hinchman stop, she drove away.

Dombrowski and Moore followed Hinchman, who drove at a normal pace and observed all traffic laws. They requested that a Michigan state trooper pull her over. Trooper Lou Taylor then stopped the car and arrested Hinchman for felonious assault. He noticed hand prints and other smudges in the film of dust covering the rear of Hinchman's car.

On September 30, 1997, a state court judge determined that there was probable cause for charging Hinchman with the crime of felonious assault. The judge based his decision on the testimony of Dombrowski and Moore, with no one else taking the stand. Hinchman was bound over for trial. She was subsequently acquitted by a jury on the criminal charge.

## B.  Procedural background

Hinchman filed the present lawsuit on June 11, 1999, alleging violations of her Fourth and Fourteenth Amendment rights, as well as state-law claims of false arrest, false imprisonment, and malicious prosecution. The defendants then filed a motion for summary judgment, which the district court granted. It held that Hinchman was barred from relitigating the issue of probable cause, the absence of which was necessary in order for her to prevail on all of her claims other than her Fourteenth Amendment equal protection claim. The court held in the alternative that probable cause for her arrest existed. Finally, in a ruling that Hinchman does not appeal, the court dismissed Hinchman's Fourteenth Amendment claim.

The defendants subsequently filed a motion for costs and attorney fees, which the district court granted in part and

applicable only to a prevailing party. *See* Fed. R. Civ. P. 54(d)(1) ("[C]osts other than attorneys' fees shall be allowed as of course to the prevailing party."); 42 U.S.C. § 1988(b) ("[T]he court . . . may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."). Because we are reversing the district court's grant of summary judgment, we also must reverse the court's grant of costs to the defendants.

## III.  CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

"[T]he next, sequential step is to ask whether the right was clearly established" at the time of the violation. *Id.* "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ewolski v. City of Brunwick*, 287 F.3d 492, 501 (6th Cir. 2002) (internal quotation marks and alteration omitted). "Although it need not be the case that the very action in question has been previously held unlawful, in light of pre-existing law, the unlawfulness must be apparent." *Id.* (internal quotation marks and alteration omitted).

Dombrowski and Moore claim that they are entitled to qualified immunity because they "could have believed that probable cause existed for Hinchman's arrest." Hinchman counters that any such belief would have been unreasonable based on her version of the facts. She alleges, after all, that they lied in order to manufacture probable cause.

At the present stage of the proceedings, we must accept as true Hinchman's factual assertions, which she supports with admissible evidence. Falsifying facts to establish probable cause to arrest and prosecute an innocent person is of course patently unconstitutional and has been so long before the defendants arrested Hinchman. *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989) ("[O]nly if a false statement was made knowingly and intentionally, or with reckless disregard for the truth and if, with the [officer's] false material set to one side, the [defendant's conduct] is insufficient to establish probable cause, is there a constitutional violation under the Fourth Amendment.") (internal quotation marks and alterations omitted). We are therefore unable to affirm the district court's grant of summary judgment on the basis of qualified immunity.

**B.   Order granting costs to defendants**

After granting the defendants' motion for summary judgment, the court granted the defendants' motion for costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 1988. Those provisions are

denied in part, awarding $3,043.23 in costs to the defendants. Hinchman then filed this timely appeal.

## II.   ANALYSIS

**A.   Order granting the defendants' motion for summary judgment**

### 1.   *Standard of review*

We review the district court's grant of summary judgment de novo. *Sperle v. Michigan Dep't of Corr.*, 297 F.3d 483, 490 (6th Cir. 2002). Summary judgment is proper where there exists no issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering such a motion, the court construes all reasonable factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### 2.   *Hinchman's claims*

As the district court correctly noted, Hinchman must prove a lack of probable cause in order for her to prevail on her Fourth Amendment and state-law claims. *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) ("[T]he Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty. Thus, arrest without a warrant does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law.") (internal citation and quotation marks omitted); *Burns v. Olde Discount Corp.*, 538 N.W.2d 686, 688 (Mich. Ct. App. 1995) ("A claim of false arrest requires proof that the arrest lacked probable cause. Similarly, a malicious prosecution claim requires proof that there was no probable cause for the proceeding.") (internal

citation omitted); *Tope v. Howe*, 445 N.W.2d 452, 459 (Mich. Ct. App. 1989) ("In order to prevail on a claim of false arrest or false imprisonment, the plaintiff must show that the arrest was . . . made without probable cause."). The district court granted the defendants' motion for summary judgment because (1) the state judge at the preliminary hearing determined that there was probable cause to arrest Hinchman, thus precluding her from relitigating the issue in this action, and (2) in any event, the record indicates that probable cause existed to arrest and prosecute Hinchman.

### a.    Collateral estoppel

A finding in a prior criminal proceeding may estop an individual from relitigating the same issue in a subsequent civil action. *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568-69 (1952) (holding that "plaintiffs are entitled to introduce the prior judgment to establish prima facie all matters of fact and law necessarily decided by the conviction and the verdict on which it was based"). "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Under Michigan law, collateral estoppel applies when

1) there is identity of parties across the proceedings, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated and necessarily determined in the first proceeding, and 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (citing *People v. Gates*, 452 N.W.2d 627, 630-31 (Mich. 1990)).

The defendants argue that collateral estoppel bars Hinchman from relitigating the issue of probable cause because that exact issue was already determined by a state

### a.    Absolute witness immunity

Absolute witness immunity bars a claim that is based on a defendant testifying in a prior judicial proceeding. *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999) ("It is well-settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings."). Immunity regarding testimony, however, does not "relate backwards" to events that transpired prior to testifying, even if they are related to subsequent testimony. *Id.* (noting that "constitutional wrongs completed out of court are actionable even if they lead to . . . acts [subject to absolute witness immunity]").

Hinchman's claims are based on the defendants' alleged prevarications prior to testifying at the preliminary hearing. Specifically, Hinchman contends that the defendants lied to State Trooper Taylor and to the prosecutors in order to establish probable cause to arrest, imprison, and prosecute her. Although she asserts in the complaint that the defendants also lied on the witness stand during the preliminary hearing, her claims are not based on such conduct. The defendants, therefore, are not entitled to absolute witness immunity.

### b.    Qualified immunity

Under the doctrine of qualified immunity, government officials performing discretionary functions will not incur liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The purpose of the doctrine "is to allow public officials to perform important government functions free from the debilitating effects of excessive litigation." *Bartell v. Lohiser,* 215 F.3d 550, 556 (6th Cir. 2000).

When qualified immunity is asserted, the district court must conduct a two-step inquiry. The first step is to decide whether the complaint alleges a violation of a constitutionally protected right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

neither Dombrowski nor Moore reasonably feared being the victim of an immediate battery.

Under either the federal or the Michigan standard for probable cause, the facts as related by Hinchman (which we must accept for the purposes of reviewing the grant of summary judgment against her), do not establish probable cause to arrest and prosecute her for the crime of felonious assault. Hinchman stated in her deposition that she kept both officers in sight in her rear-view mirror while she backed up "[j]ust enough to clear the curb." The officers were aware that Hinchman was headed to the washateria, and her actions provide no reason to believe that she had any other intent when she backed her car out of its parking spot.

Dombrowski and Moore, of course, understood that Hinchman was not interested in speaking with them and that she did not wish to wait until the investigative subpoena arrived. They were also keenly aware of the fact that, as the district court noted, they were in close proximity to Hinchman's car. None of these additional facts, however, would allow a rational factfinder to conclude that the officers' fears of an immediate battery were reasonable if the remaining facts as presented by Hinchman are true.

### 3. Immunity

The defendants maintain, as alternative defenses, that they are entitled to both absolute and qualified immunity. Because the district court granted the defendants' motion for summary judgment on other grounds, however, it did not assess the defendants' immunity defenses. We examine those defenses below to determine whether they are sufficient to support the district court's judgment. *See Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir. 1999) ("This court can affirm a decision of the district court on any grounds supported by the record, even if different from those relied on by the district court.").

court judge at the preliminary hearing. Hinchman contends, however, that the issue in question here was not previously litigated. She maintains that the preliminary hearing concerned probable cause to arrest and prosecute her for felonious assault, while "the central issue [here] is whether the detectives . . . supplied the prosecutor's office and the state court with a false version of the facts."

The court's decision in *Darrah*, which was issued approximately five months after the district court granted the defendants' motion for summary judgment, is controlling. It held that a finding of probable cause in a prior criminal proceeding does not bar a plaintiff in a subsequent civil action from maintaining a claim for malicious prosecution under Michigan law where the claim is based on a police officer's supplying false information to establish probable cause. *Darrah*, 255 F.3d at 311. The *Darrah* court followed the lead of an unpublished Sixth Circuit case, *Josey v. Salisbury*, No. 92-2093, 1993 WL 476974 (6th Cir. Nov. 18, 1993) ("In this action, the core issue is whether the officers misstated the facts to establish probable cause[;] at the preliminary hearing, the central question was whether there was probable cause. While the two inquiries are clearly related, they are not identical. Consequently, the identity of issues required for preclusive effect is absent here."). *Darrah*, 255 F.3d at 311 (citing and explaining *Josey*).

*Josey* in turn adopted the reasoning of a Seventh Circuit case, *Schertz v. Waupaca County*, 875 F.2d 578, 581 (7th Cir. 1989) (holding, in an action similar to the one at bar, that "the preliminary hearing determination does not preclude relitigation of the probable cause issue. The preliminary hearing concerned the sufficiency of the evidence to establish probable cause. Since the instant claim is more accurately characterized as a challenge to the integrity of the evidence than to its sufficiency, identity of the issues is lacking."). *Josey*, 1993 WL 476974, at *2 & n.2. The *Darrah* court explained:

In *Josey*, as in this case, the plaintiffs based their malicious prosecution claim in federal court on the grounds that the defendant-officers had knowingly supplied the magistrate with false information in order to establish probable cause. . . . Thus, . . . [the] plaintiffs were not attempting to relitigate the identical issue of whether probable cause exists; rather, they were arguing that the officers misstated material facts in order to establish probable cause at the state level.

*Darrah*, 255 F.3d at 311 (concluding that "the identity of issues requirement under Michigan law has not been satisfied in this case") (citation omitted). Thus, while not every criminal defendant turned civil plaintiff will prevail in a § 1983 action based on malicious prosecution or a similar claim after being acquitted on criminal charges, *Darrah* compels our conclusion that collateral estoppel does not bar Hinchman from asserting her claims.

We frankly find the logic of *Darrah*'s collateral-estoppel holding questionable. A state court judge ruling on the presence or absence of probable cause in a criminal action must necessarily take into account the veracity of the officers' statements. At the preliminary hearing in the present case, Hinchman was free to cross-examine the two defendants and to take the stand herself in an effort to discredit their testimony. Whether or not she did so, *Darrah* allows her a second bite at the probable-cause apple, a result that is diametrically opposed to the collateral-estoppel concept. We are bound, however, by published Sixth Circuit precedent. *Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.").

Accordingly, we will turn to the merits of Hinchman's claims. Prior to doing so, however, we note the defendants'

argument that we should disregard *Darrah* because its discussion of collateral estoppel was dicta. Dicta is the "[o]pinion[] of a judge which do[es] not embody the resolution or determination of the specific case before the court." Black's Law Dictionary 454 (1990). We are of course not bound by dicta. *Re/Max Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 643 (6th Cir. 2001) (noting that language in an opinion that is dicta is "not binding on this Court"), *cert. denied*, 122 S. Ct. 1539 (2002). The collateral-estoppel discussion in *Darrah*, however, was necessary for the court to reach the merits of the plaintiff's malicious prosecution claim and thus was not dicta.

#### b.    *Probable cause*

Hinchman was arrested and prosecuted on the charge of felonious assault. In Michigan, a criminal assault is committed "where an actor engages in some form of threatening conduct designed to put another in apprehension of an immediate battery." *People v. Reeves*, 580 N.W.2d 433, 436 (Mich. 1998). Whether there was an "apprehension of an immediate battery" depends "on what the victim perceived, and whether the apprehension of imminent injury was reasonable." *Id.*

For purposes of federal law, probable cause to arrest and prosecute is based on the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person . . . in believing . . . that the suspect has committed, is committing, or is about to commit an offense." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988). The probable cause determination is essentially the same under Michigan law: "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *People v. Champion*, 549 N.W.2d 849, 860 (Mich. 1996). Hinchman argues that there was no probable cause to arrest and prosecute her for the crime of felonious assault because