**Elizabeth MILLER, Plaintiff–Appellant,**

v.

**SODAK GAMING, INC., Defendant–Appellee.**

No. 02–2288.

United States Court of Appeals, Sixth Circuit.

March 30, 2004.

Stephen A. Hilger, Rhoades, McKee, Boer, Goodrich & Titta, Grand Rapids, MI, for Plaintiff–Appellant.

Graham K. Crabtree, Thaddeus E. Morgan, Fraser, Trebilcock, Davis & Dunlap, Lansing, MI, for Defendant–Appellee.

Before SUHRHEINRICH, CLAY and SUTTON, Circuit Judges.

CLAY, Circuit Judge.

Plaintiff Elizabeth Miller appeals the September 26, 2002, order of the United States District Court for the Western District of Michigan, granting summary judgment in favor of Sodak Gaming, Inc. ("Sodak") on Plaintiff's claims of breach of contract, breach of implied contract, prom-

issory estoppel and unjust enrichment. Plaintiff claims that Sodak is obligated to pay her a "primary progressive jackpot" of $1,571,862.00 that she purportedly won on a "Wheel of Fortune" slot machine at the Kewadin Shores Casino in St. Ignace, Michigan. Because there is no genuine issue of material fact that Miller was not a jackpot winner under the rules of the game, Sodak is entitled to judgment as a matter of law. The Court therefore AFFIRMS the judgment of the district court.

I

The Wheel of Fortune nickel video slot machine at issue in this case is a gaming machine manufactured by International Gaming Technology–North America, Inc. ("IGT") and distributed to gaming sites on Indian lands by its subsidiary, Defendant Sodak Gaming, Inc. ("Sodak").[1] The machine is operated pursuant to a contract between Sodak, IGT and the Sault Ste. Marie Tribe of Chippewa Indians, which owns and operates the Kewadin Shores Casino in St. Ignace, Michigan. The machine is part of a wide-area system that includes other machines operated at the Kewadin Shores Casino and similar machines at other casinos around the country. Sodak installed IGT's slot machines at Kewadin Shores, and equipped the machines with special monitoring equipment created by IGT. This special equipment allows the machines to be linked to Sodak's monitoring site in South Dakota via the Wide Area Progressive Monitoring System.

Instead of mechanical spinning reels, the reels on the Wheel of Fortune machine are displayed in five columns on a video screen. A play of the Wheel of Fortune machine is initiated by pressing a spin button on the face of the machine or by touching the screen. A rectangular screen, or meter, above the video display tracks the amount of the "primary progressive jackpot." Over time, the progressive jackpot meter increases, or "increments," until a primary progressive jackpot win is registered by one of the machines connected to the wide-area system. The slot machine's rules, which are prominently displayed on the machine, require a winning combination on the video spinning reels to constitute a primary progressive win—specifically, the spinning reels have to show five Wheel of Fortune symbols on the ninth line, with the maximum bet of 45 nickels.

If a primary progressive jackpot win is registered on Sodak's monitoring system, the tower light on the top of the machine flashes both bulbs simultaneously, the video screen on the machine depicts a framed box with the message, "JACKPOT Hand Pay Pending Please Call Attendant," the progressive meter on the machine freezes on the current jackpot amount, and all of the machines on the network are reset to the face value of the new jackpot— $100,000. The machine also may play music, but not at a volume louder than typically played by a machine not being played. The machine's progressive meter will not resume incrementing until after the jackpot win is verified and the jackpot reset function on the machine is completed. The game is inoperable until the jackpot reset function is completed.

Plaintiff Elizabeth Miller, a Michigan resident, had been gambling at the Kewadin Shores Casino for two-and-half days, having lost $2,300, when on January 4, 2001 she allegedly won a primary progressive jackpot of over $1.5 million on a

---

1. Sodak was a South Dakota corporation at the time litigation commenced. Sodak has since relocated to Reno, Nevada.

Wheel of Fortune video slot machine. According to Miller, at approximately 6:30 a.m., she played the maximum bet (45 nickels on nine lines), pushed the spin button on the slot machine, but the wheels depicted on the machine "never did spin" and remained fixed on her last play of the game.[2] (J.A. 198.) Nevertheless, she testified that she won the jackpot because one of the lights on top of her machine (the red light) began blinking, she heard loud music coming from the machine, and unnamed casino employees congratulated her.[3] She acknowledges, however, that the progressive meter on her machine continued to increment[4] and that the progressive meters on the adjacent machines did not reset to $100,000.00.

After Miller's purported jackpot, Edward Sagataw, a slot technician at the casino, responded to Miller's jackpot claim. He performed a function on the machine called a "last game recall" which indicated that Miller had not won the jackpot because there were only three Wheel of Fortune symbols displayed. This observation was confirmed by numerous other casino employees. Miller claims that Sagataw opened the front of the machine, turned off the music and lights, and then stated that the machine had malfunctioned and that she was not entitled to the jackpot.

Miller remained at the machine another four hours, during which she refused to allow other customers to play the machine and instructed casino personnel to "guard the machine" when she was not present. According to casino employees, Miller began to harass customers and accuse the casino of cheating her and rigging the machines. After being asked three times to leave, Miller eventually was escorted from the casino by two employees.

Miller subsequently complained to the Sault Tribal Gaming Commission and the National Indian Gaming Commission, requesting an investigation of her claim. After interviewing witnesses, reviewing surveillance tapes and commissioning a forensic analysis of the machine's logic board, both the Tribal Gaming Commission and the NIGC concluded that there was no winning jackpot combination on the slot machine, and therefore, she was not a primary progressive jackpot winner.

On July 12, 2001, Miller filed suit against Sodak in the United States District Court for the Western District of Michigan. The complaint alleged claims of breach of contract, breach of implied contract, promissory estoppel and unjust enrichment based on Sodak's refusal to pay Miller a "primary progressive jackpot" of $1,571,862.00. By consent of the parties, the matter was referred to Magistrate Judge Timothy P. Greeley.

After discovery, the court entertained and granted Sodak's motion for summary judgment on September 26, 2002. The court granted the motion principally on the ground that a rule prominently posted on the slot machine requires that, in order to win a primary progressive jackpot, the virtual reels on the machine must spin and then display five Wheel of Fortune symbols on the ninth line of the video display.

2. Miller has no recollection of what was displayed on the spinning reels from her previous play of the machine.

3. Ironically, Miller argues on appeal that "[n]o Defendant or Casino employee was an eyewitness or has any personal knowledge to [sic] Mrs. Miller winning the Jackpot." *Appellant's Br.* at 27 (emphasis omitted).

4. Miller contends that the progressive meter froze "for a short period of time," but then resumed incrementing. According to one of Sodak's experts, progressive meters can "fall behind" and then will increase the pace of the incrementing to "catch up."

By Miller's own admission, the virtual reels did not spin, nor did they display five Wheel of Fortune symbols, prior to her alleged jackpot. Accordingly, the court held, "[B]ecause plaintiff never had a winning combination of five Wheel of Fortune symbols on the ninth line, it is clear that defendant is entitled to summary judgment on this simple fact alone." (J.A. 871–72.) The court further was persuaded by Sodak's expert testimony explaining that Sodak's computer monitoring system detected no jackpot and that the videotapes at the casino recorded no overt indicia of a primary progressive jackpot, such as simultaneous flashing lights on the top of Miller's machine, a "JACKPOT" graphic on the screen of Miller's machine, and a frozen jackpot amount on the machine.

The district court's order granting summary judgment also denied Miller's motion for leave to amend her complaint to add IGT as a party defendant on the ground that amendment would have been futile. Miller filed her notice of appeal on October 24, 2002. On appeal, she has not challenged the district court's denial of her motion to amend the complaint.

## II

### A. Standard of Review

The district court's decision granting summary judgment is reviewed *de novo*. *Hinchman v. Moore*, 312 F.3d 198 (6th Cir.2002). Summary judgment is proper under Rule 56 of the Federal Rules of Civil Procedure when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering such a motion, the court construes all reasonable factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Analysis

At oral argument, the Court raised the question of whether Miller sued the correct party. The crux of Miller's lawsuit is that she entered into a contract to be paid a primary progressive jackpot if she won pursuant to the rules posted on the machine, and that this contract was breached when she won the jackpot, but was not paid. It is by no means clear, however, that Sodak was the other party to this contract with Miller. The undisputed facts show that non-party IGT, a separate corporation, owns the Wheel of Fortune slot machine on which Miller allegedly won a million-dollar jackpot. Sodak only placed the machine in operation at the Kewadin Shores Casino and performed certain monitoring duties pursuant to a contract between Sodak, IGT and the Sault Ste. Marie Tribe of Chippewa Indians, which owns and operates the casino. Moreover, under that contract, even if a player wins a primary progressive jackpot, the Kewadin Shores Casino is obligated to pay, although IGT has agreed to fulfill that obligation "on behalf of" the casino. Thus, the Court fails to see how Sodak can be held liable for failing to pay Miller a jackpot under a contract theory or any other theory.

The Court has been cited to no evidence to support Miller's assertion that, to the general public, Sodak is the entity with whom they contract when they insert their money in the machines. There is no evidence that, prior to Miller playing the Wheel of Fortune slot machine, Sodak was

identified in any way to Miller as the party responsible for the payment of jackpots. Indeed, without any evidence to the contrary, it appears that Miller's contract was solely with the casino.

The Court nevertheless is reluctant to affirm the district court's grant of summary judgment on the ground that Miller sued the improper party. The parties barely briefed the issue in the district court or on appeal, and the district court did not grant summary judgment on this ground. As discussed below, however, resolution of this issue is unnecessary because Miller's claims fail on the merits.

The Court unanimously holds that the district court properly granted summary judgment to Sodak on Miller's contract and equity-based claims because Miller admits she was not a "primary progressive jackpot" winner according to the rules of the Wheel of Fortune Slot machine. The Michigan Court of Appeals' decision in *Coleman v. State of MI, Bureau of State Lottery,* 77 Mich.App. 349, 258 N.W.2d 84 (Mich.Ct.App.1977), most closely resembles Miller's contract claims. In *Coleman,* the plaintiff was erroneously announced as the winner of a $200,000 lottery prize, instead of a $50,000 prize. *Coleman,* 258 N.W.2d at 350–51. The Michigan Court of Appeals noted that a lottery winner's entitlement to a prize is governed by principles of contract law. *Id.* at 351. The court found that the lottery bureau had made a public offer that the purchaser of a lottery ticket would have a chance of winning a prize according to the advertised rules and procedures of the lottery. *Id.* In purchasing her ticket, the plaintiff had accepted that offer and agreed to the announced rules for determining prize winners. *Id.* Because the rules of the game controlled, the court held that the erroneous award was revocable. *Id.* at 353.

Here, it is undisputed that the prominently-posted rules of the game required Miller's slot machine to register five Wheel of Fortune symbols on the ninth line of the video display. *Cf. Decker v. Bally's Grand Hotel Casino,* 280 N.J.Super. 217, 655 A.2d 73, 75 (N.J.Ct.App.1994) ("The plaintiff's only contract with any defendant is the obligation of the defendants to pay the posted machine jackpot to the plaintiff immediately after the plaintiff has inserted the requisite coinage if the deposit of coinage *registers a jackpot on the particular machine then in use.*") (emphasis added). By Miller's own admission, buttressed by the testimony of other witnesses, Miller's machine did not register five symbols. Accordingly, under the rules of the game, she was not a primary progressive jackpot winner, and Sodak is entitled to summary judgment on her contract claims.

Miller's promissory estoppel and unjust enrichment claims fail for the same reason. An unjust enrichment claim requires "an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Barber v. SMH (US), Inc.,* 202 Mich.App. 366, 509 N.W.2d 791, 796 (Mich.Ct.App. 1993) (citing *Dumas v. Auto Club Ins. Ass'n,* 437 Mich. 521, 473 N.W.2d 652 (Mich.1991)). Miller suffered no inequity because under the clearly posted rules of the game, she was not entitled to a primary progressive jackpot. Further, promissory estoppel requires evidence of, *inter alia,* a promise that "must be enforced to avoid injustice." *Crown Tech v. D & N Bank,* 242 Mich.App. 538, 619 N.W.2d 66, 71 (Mich.Ct.App.2000) (citation omitted). There is no evidence, however, that Sodak made a promise to pay a primary progressive jackpot when a player did not win pursuant to the clearly posted rules of the game. Thus, there is no concern about Miller suffering injustice.

Miller's admission that she was not a winner pursuant to the rules of the slot machine is sufficient in itself to warrant summary judgment for Sodak. Nevertheless, the remaining evidence in the case overwhelmingly reinforces the conclusion that Miller did not win a primary progressive jackpot.

There were three videotapes of the events surrounding Miller's alleged jackpot. Pursuant to the unrebutted testimony of Sodak's two expert witnesses,[5] these tapes show that Miller's machine did not display the objective indications of a jackpot mode: (1) a machine in jackpot mode flashes its bulbs simultaneously, but the lights on Miller's machine were not flashing in this manner after her purported win; (2) when a machine wins a primary progressive jackpot its progressive jackpot meter freezes on the amount of the win and the meters on the adjacent machines also freeze, but the meters on Miller's machine and on the adjacent machines continued to increase after her alleged win; and (3) the words "JACKPOT Hand Pay Pending Please Call Attendant" appear on the screen of a machine that wins a primary progressive jackpot, but Miller's machine did not display these words.

Miller points out that there are no game rules that require simultaneously flashing bulbs, a frozen progressive meter and the display of the word "Jackpot" on the screen in order to be entitled to the jackpot. Therefore, she argues that by relying on the absence of these phenomena, Sodak is somehow attempting to impose new game rules. This argument is frivolous. Sodak points to the absence of these phenomena not as game rules, but as objective indications that Miller did not win the

jackpot by causing the reels to spin and land on five Wheel of Fortune symbols.

The computer record evidence also undermines Miller's claim that she was a primary jackpot winner. The Kewadin Shores Casino maintains a monitoring system for its slot machines; that system is manufactured and supported by Bally Systems, a competitor of Sodak. Transaction reports describe activities on the slot machine in question during the relevant timeframe, depicting activity like "slot door open/closed," and "machine paid jackpot." There is no listing of a primary progressive jackpot during the relevant timeframe.

In addition to being linked to the casino's monitoring system, the Wheel of Fortune slot machines are linked to Sodak's monitoring site in South Dakota via the Wide Area Progressive Monitoring System. The system maintains a constant electronic "watch and record" function of all machines connected to it. The system monitors all essential events (known as "exceptions") for every machine on the network, including machine door openings, communication failures, primary jackpots, and coin-in and coin-out jams. When the system recognizes a primary jackpot, it triggers a series of events: (1) alerts from the system, (2) a dot-matrix printer running off frantically, (3) the reset of all non-winning machines on the system, (4) contacting the casino staff for verification of potential win and (5) dispatching a jackpot verification team consisting of a trained technician and an IGT representative. None of these events occurred on the day in question. According to a printout of all activity recorded on the system during the time-frame in question, there are no

---

**5.** Sodak proffered the expert testimony of Robert Sertell, a 46–year veteran of the gaming industry with extensive experience in slot instruction and gaming security and surveillance, and Jon Johnson, a Sodak employee with 12 years of experience in electronic communications and gaming machines.

events showing a primary progressive jackpot, although there are numerous other events listed, such as "door open," "coin jam," and "game restored to normal."

Miller challenges the reliability of Sodak's monitoring system, but her arguments do not raise a genuine issue of material fact as to whether she was a primary jackpot winner. First, she argues that Sodak's system is flawed because she had won a $50 jackpot at approximately 6:00 a.m., which requires the machine to be reset, but that event is not reflected in Sodak's computer records. The record shows, however, that a $50 jackpot is not supposed to be relayed to Sodak's central monitoring system because it is not a "primary" or "secondary" jackpot. Second, she argues that about twenty minutes later, her slot machine again required resetting because she had won free bonus points, but that this event is not reflected in the computer records. Again, the record evidence shows that any win less than a primary or secondary does not register on Sodak's monitoring system. Third, Miller argues that the Sodak system failed to register the slot technician's insertion and abandonment of his card in the machine at some point before Miller's alleged jackpot, whereas the casino system did record these events. It is undisputed, however, that without an open door, a mere insertion or abandonment of a card does not register on Sodak's system, even though such events may be recorded on the casino's system. Fourth, Miller argues that the Sodak system failed to register a buzzing noise the machine allegedly made prior to the purported jackpot; however, there is no evidence in the record that the system normally records such events. Fifth, Miller points out that there was a "printer carriage fault" at 6:39 a.m., but fails to explain how this fact proves the Sodak system to be unreliable; the record shows that a printer carriage fault would not have any effect on the operation of the monitoring system.[6]

Last, Miller argues that she is entitled to an adverse inference that precludes summary judgment because Sodak allegedly spoiled computer record evidence that would have proved her claims. She argues that, despite her protests on the day she allegedly won the jackpot, the machine she had been playing remained in play at the casino. Because the machine retains only a recall of the past 25 spins, the record of her purported jackpot spin was extinguished when the machine remained in play.

This argument is meritless for several reasons. First, Miller's own testimony shows that the reels never spun and never displayed five Wheel of Fortune symbols. Since she concedes the reels never spun, it is unclear how evidence of the past 25 spins would aid her case. Second, Sodak cannot be charged with the casino's failure to preserve evidence. A decision about

---

6. Miller also argues that Sodak's monitoring system failed to register the fact that Edward Sagataw, the slot technician who approached Miller after her purported jackpot, had opened the machine's door and inserted his card to reset it. Contrary to Miller, Sagataw testified that he did not open the door, but that he reset the machine only by inserting his employee card, inserting his key and turning it, which is standard practice for resetting a machine after a $50 hand-pay jackpot. Although it is undisputed that without an open door, a reset performed in this manner would not be recorded by Sodak's system, there is a factual dispute over whether Sagataw opened the door. Thus, it is conceivable that the Sodak monitoring system failed in this regard. However, in light of the overwhelming evidence that Miller was not entitled to the jackpot, this factual dispute about the quality of Sodak's monitoring system is not sufficiently material to preclude summary judgment for Sodak.

854

whether to remove a gambling machine from circulation is up to the casino and/or the local regulatory authority, here, the Sault Tribal Gaming Commission. Moreover, the record evidence shows that Sodak does not own the casino and does not even have a principal-agent relationship with the casino. Under its agreement with the casino, the casino was responsible for preventing further play of the machine once Miller allegedly won the progressive jackpot.

### III

For all the foregoing reasons, the Court AFFIRMS the district court's order granting summary judgment in favor of Sodak Gaming, Inc. and denying Miller's motion to amend her complaint.