**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0974n.06

No. 13-3173

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 13, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TERRY BACH, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| SCOTT DRERUP; PAUL MARKOWSKI; | ) | THE SOUTHERN DISTRICT OF |
| JOHN/JANE DOE, | ) | OHIO |
| | ) | |
| Defendants-Appellees. | ) | |

Before:  DAUGHTREY, COOK, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.**  Terry Bach appeals the district court's grant of

Defendants' motion for summary judgment in this 42 U.S.C. § 1983 action alleging false arrest and

malicious prosecution.  We AFFIRM.

**I.**

Defendants Scott Drerup and Paul Markowski are Kettering (Ohio) police officers who

arrested Bach, without a warrant, for the August 21, 2009, aggravated robbery of a Walgreens store

in Kettering.  According to the incident report and witness statements, the robber of the Walgreens

store wore a green, hooded sweatshirt, displayed a knife to store employees, stated that he had a gun,

and demanded Oxycontin.  The pharmacist complied and placed the Oxycontin in a bag.

Bach's arrest was based largely on an interview of Michelle Walls conducted by Detective

Gary Schomburg and Officer Drerup on September 1, 2009.  Walls was under investigation for

unrelated charges. As the officers concluded the interview, Drerup asked Walls whether she had information that would help in other investigations. Walls responded that she got Xanax from a drug dealer who lived down the street, and went on to describe Terry Bach. Walls recounted being at Bach's house one night and seeing him repeatedly put a green, hooded sweatshirt in the oven to cause it to catch on fire. Walls said that the plain sweatshirt was unusual for Bach because most of his tops had designs or logos, that Bach showed her a sock containing a large amount of Oxycontin, talked about burying a pair of shoes, told her he was going back to prison for committing a robbery, stated that he had robbed a Walgreens of Oxycontin and told the Walgreens clerk that he had a gun when he only had a knife, and that the Walgreens clerk put the Oxycontin in a bag. Walls also stated that Bach told her that since she would eventually be arrested, he did not want her telling police about the Walgreens robbery he had told her about.

Defendant Drerup was aware that Defendant Markowski was investigating the Walgreens robbery and pulled the case file to check whether Walls's statement matched the details of the robbery. When Drerup showed Walls the video surveillance of the Walgreens robbery, Walls said "Wow, that's definitely Terry." Walls stated that the perpetrator stood like Bach, put his hands on his hips like Bach, and had "long fingers like Terry."

Based on Walls's statements, Drerup researched Bach's criminal history and compared the physical description provided by a Walgreens employee to physical attributes listed in Bach's criminal history. A Walgreens employee had described the perpetrator as a thin, white male with facial hair, approximately 20 to 25 years old, and 5'3" to 5'5" tall. Police records described Bach differently, as between 5'7" and 6'0" and between 120 and 180 pounds.

After reviewing Bach's police file, Drerup prepared a photographic lineup using a 2008 photograph of Bach. Two Walgreens pharmacy employees were unable to identify Bach and

2

explained that they had been scared to look at the perpetrator's face while being robbed at knife-point. A third Walgreens employee who had been present at the robbery was not shown the photo lineup at that time.

On September 3, 2009, two days after the initial interview, Defendants interviewed Walls a second time to gauge whether her story remained consistent and for Markowski to assess her credibility. Based on Walls's statements, Defendants arrested Bach for the Walgreens robbery later that day. Bach agreed to speak with Defendants, denied involvement in the Walgreens robbery, and consented to a search of his home and to a polygraph test. The search yielded no evidence related to the robbery and Bach continued to deny his involvement. Drerup then prepared a second photographic lineup using Bach's recent arrest photo. The third Walgreens employee positively identified Bach.

The third Walgreens employee was the sole witness at Bach's preliminary hearing. The state court found probable cause to bind the matter over to the Montgomery County grand jury. Walls testified before the grand jury, which returned an indictment against Bach on September 29, 2009.

About six weeks later, Walls stated in a November 13 sworn affidavit:

> I made up the entire statement I wrote about Terry Bach on September 1, 2009 so that Police would not pursue charges against me; . . . . No one has forced, threatened, or coerced me into making this statement. No promises have been made to get me to make this statement.

On December 19, Walls allegedly told Kettering Police that she lied in her November 13 affidavit because she did not want to testify at Bach's trial and was afraid of Bach and his father. Walls allegedly stated that Bach's father offered to pay her legal fees, bought her a bus ticket, and told her he wanted her out of town before Bach's second trial. The district court struck Walls's statement on Bach's motion, stating that it had "no basis to conclude the evidence is, or even could

be, what it purports to be." When Bach's trial ended in a hung jury, the prosecutor dismissed the case. Bach later filed the instant § 1983 action alleging false arrest and malicious prosecution. The district court granted Defendants' motion for summary judgment, and this appeal ensued.

**II.**

We review a grant of summary judgment de novo. *Sullivan v. Oregon Ford, Inc.*, 559 F.3d 594, 594 (6th Cir. 2009). Under Rule 56(a), summary judgment is proper if "the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Estate of Smithers v. City of Flint*, 602 F.3d 758, 761 (6th Cir. 2010).

**A.**

To recover against an individual actor for constitutional violations under § 1983, a plaintiff must demonstrate that the actor directly participated in the alleged misconduct, at least by encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct, if not carrying it out himself. *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). A false arrest claim under federal law requires a plaintiff to establish that the arresting officer lacked probable cause to arrest the plaintiff. *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010). To succeed on a malicious prosecution claim, the plaintiff must show that: (1) a prosecution was initiated against the plaintiff and that the defendant participated in the decision; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty as a consequence of the legal proceedings; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Id*. at 308–09. Probable cause to make an arrest exists "'if the facts and circumstances within [the arresting officer's] knowledge . . . were sufficient to warrant a prudent' person to conclude that an [arrestee] either had committed or was

4

committing an offense." *United States v. Torres-Ramos*, 536 F.3d 542, 555 (6th Cir. 2008) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). A reviewing court must assess whether there was probable cause "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 302 (6th Cir. 2005). "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Parsons v. City of Pontiac*, 533 F.3d 492, 501 (6th Cir. 2008).

**B.**

Bach argues that Defendants either falsified or coerced Walls's statement and that Defendants thus lacked probable cause to arrest him. Defendants maintain that Bach is precluded from relitigating the probable cause issue because it was determined by the state court at Bach's preliminary hearing. Bach disagrees, maintaining that collateral estoppel does not apply because he is challenging the integrity of the evidence underlying Defendants' probable-cause determination. *See, e.g., Hinchman v. Moore*, 312 F.3d 198, 202–03 (6th Cir. 2002) ("[A] finding of probable cause in a prior criminal proceeding does not bar a plaintiff in a subsequent civil action from maintaining a claim for malicious prosecution . . . where the claim is based on a police officer's supplying false information to establish probable cause.") (discussing *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001)).

Unlike in *Hinchman*, however, in the instant case, neither Defendant testified at Bach's preliminary hearing; rather, Bach was bound over on the testimony of the third Walgreens employee. Although Walls's statements led Defendants to arrest Bach and to the Walgreens employee's subsequent identification of Bach in the photographic lineup, the state court relied only on the employee's identification of Bach in finding probable cause. And, although Bach alleges that he was prevented from fully litigating the basis of the employee's identification, nothing in the record

5

suggests that he was precluded from challenging the state court's probable cause finding. Under these circumstances, Bach is collaterally estopped from relitigating the probable cause issue. *See Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007) (concluding that because the state court did not rely on falsified statements to establish probable cause, collateral estoppel barred the plaintiffs' claims).

## C.

Further, if we were free to address the issue, we would conclude that there was probable cause to arrest and prosecute Bach. Although several months after Bach's arrest Walls stated in an affidavit that she "made the entire statement up," the recanting affidavit does not state or imply that Defendants coerced or falsified her original statements. Nor did Bach present evidence indicating that Drerup or Markowski should have suspected that Walls was lying when she provided them information regarding the Walgreens robbery shortly after it occurred. And, Bach admitted on deposition that the only information he had regarding the manner in which Walls's statement was obtained was through individuals who were not present when Walls made the statements. In sum, Bach presented no testimony or affidavit supporting his claims that Walls's statement was falsified or coerced. Further, probable cause was not undermined by the conflicting descriptions of the Walgreens robber; the height difference was not so extreme as to make Walls's statement unworthy of belief. Nor was it undermined by the additional assertedly exculpatory evidence. *See Bach v. Drerup*, No. 3:11-CV-317, 2013 WL 146371, at \*11–12 (S.D. Ohio Jan. 14, 2013).

Bach also complains that Defendants had probable cause to arrest and prosecute him only *after* his initial arrest. He contends that because Defendants would not have connected him to the Walgreens robbery and shown his photograph to the Walgreens employee absent Walls's statement,

6

the Walgreens employee's identification of Bach was tainted.  However, Walls's statement was not shown to be coerced, and it therefore provided probable cause to arrest and prosecute Bach.

**D.**

The existence of probable cause to arrest Bach defeats his false-arrest claim.  *Arnold v. Wilder*, 657 F.3d 353, 363 (6th Cir. 2011) ("A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff.") (quoting *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010)).  It also defeats his malicious prosecution claim.  *Darrah*, 255 F.3d at 312 ("[I]f this court finds that there was probable cause to prosecute Darrah, regardless of any alleged false statements made by Bragg [the officer who allegedly made materially false statements or omissions leading to the state court's probable cause finding and Darrah's bind over], then she cannot make out a malicious prosecution claim under the Fourth Amendment.").

**III.**

For these reasons, we **AFFIRM** the district court's grant of summary judgment to Defendants.