In re Ralph MUSILLI, Debtor,

Ralph Musilli, Appellant,

v.

Barbara Droomers, Appellee.

and

In re Walter Baumgardner, Debtor,

Walter Baumgardner, Appellant,

v.

Barbara Droomers, Appellee.

Nos. 08–CV–12341, 08–CV–12342.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 25, 2008.

448

Kurt A. O'Keefe, Detroit, MI, for Debtor.

Dean M. Googasian, Googasian Law Firm, Bloomfield Hills, MI, for Appellee.

*OPINION AND ORDER GRANTING APPELLEE'S MOTION FOR LEAVE TO FILE DESIGNATION OF ADDITIONAL ITEMS IN THE RECORD (# 19) AND AFFIRMING BANKRUPTCY COURT'S DECEMBER 26, 2007 ORDER*

GEORGE CARAM STEEH, District Judge.

Debtors Ralph Musilli and Walter Baumgardner appeal from the Bankruptcy Court's December 26, 2007 Opinion granting summary judgment in favor of appellee Barbara Droomers, ruling that Musilli's and Baumgardner's debts arising from a state court finding of contempt are nondischargeable under 11 U.S.C. § 523(a)(6), and alternatively, denying a discharge of these debts under 11 U.S.C. § 727(a)(7). Droomers moved for leave to supplement the record on September 2, 2008. A hearing was held on September 3, 2008. For the reasons set forth below, Droomers' motion for leave to supplement the record will be GRANTED, and the ruling of the Bankruptcy Court will be AFFIRMED.

## I. Background

Attorney Warren Droomers filed a state court lawsuit in 2000 against Attorney John Parnell and the lawfirm of Musilli, Baumgardner, Wagner & Parnell, P.C. (the Firm), seeking a $352,636.60 referral fee for a civil lawsuit that settled for approximately $3.3 million. In 2002, Droomers moved in state court for relief under Michigan's Uniform Fraudulent Transfer Act (UFTA), M.C.L. § 566.31, *et seq.*, alleging the Firm violated the UFTA by failing to set aside the $352,636.60 after receiving payment of the contingency fee. On December 20, 2002, the state court

ordered the Firm to deposit $352,636.60 into escrow and refrain from "transferring any firm assets out of the corporation until the $352,636.60 is paid into escrow[.]" Following a bench trial that ended in May 2003, the state court found that Parnell and the Firm were liable to Attorney Droomers under a theory of unjust enrichment for approximately $225,000.00 plus interest and costs. On October 10, 2003, Attorney Droomers moved for an order requiring Parnell, Musilli, and Baumgardner to appear and show cause why they had not made the $352,636.60 deposit into escrow as ordered on December 20, 2002. In late 2003, the Firm changed its name to "Shores Legal Services" and filed for bankruptcy.

Oakland Circuit Court Judge Fred Mester found Musilli, Baumgardner, and Parnell in contempt of the December 20, 2002 state court order, and sentenced each of them to 30 days in jail. The Michigan Court of Appeals affirmed the contempt findings on June 30, 2005, but remanded to Judge Mester on the issue of whether Musilli, Baumgardner, and Parnell were found in civil or criminal contempt. Judge Mester issued a ruling of criminal contempt on December 14, 2005, and entered judgment against Musilli and Baumgardner on finding that Attorney Droomers was damaged by the contempt in the amount of $431,350.00. Musilli and Baumgardner were ordered to pay the $431,350.00 plus $16,000.00 in costs and fees.

Musilli and Baumgardner entered into a settlement agreement with Attorney Droomers' Estate, agreeing each would pay $100,000.00 to Droomers if Droomers agreed to vacate Judge Mester's December 14,2005 money judgment and finding of criminal contempt. The parties also agreed that the December 14, 2005 criminal contempt judgment would be reinstated if the $100,000.00 payments were not timely made. Pursuant to the agreement, Judge Mester vacated the criminal contempt judgment before payment was due.

Musilli and Baumgardner defaulted under the terms of the settlement agreement and, on May 1, 2006, filed a two count complaint against Droomers' Counsel and Judge Mester in federal district court alleging "extortion" and civil rights claims under 42 U.S.C. § 1983. Federal District Court Judge Sean Cox dismissed the claims on October 23, 2006, and granted $3,000.00 in Rule 11 sanctions against Musilli's and Baumgardner's Counsel on December 15, 2006.

Musilli and Baumgardner filed for bankruptcy protection on or about October 6, 2006. On May 1, 2007, Bankruptcy Judge Steven Rhodes lifted the automatic bankruptcy stay to allow the reopening of the state criminal contempt proceedings against Musilli and Baumgardner. On May 22, 2007, Judge Rhodes entered an order permitting Droomers' Estate, represented by appellee Barbara Droomers, to seek reinstatement of the damages judgment. Judge Mester reinstated his findings of criminal contempt on June 29, 2007, and again on April 16, 2008, reaffirming the money judgment against Musilli and Baumgardner.

Droomers filed adversary proceedings against Musilli and Baumgardner in Bankruptcy Court alleging the state court criminal contempt money judgments were not dischargeable. The parties filed cross-motions for dismissal and summary judgment. In a December 26, 2007 Opinion, Bankruptcy Judge Rhodes granted Droomers summary judgment on Droomers' claims that the state court money judgement is nondischargeable under § 523(a)(6), and alternatively, that Musilli and Baumgard-

ner should be denied a discharge of the judgment debt under § 727(a)(7).

11 U.S.C. § 523(a)(6) provides:

§ 523(a) A discharge under section 727, 1141, 1228(a), 1228(a), or 1328(b) of this title does not discharge an individual debtor from any debt—

* * *

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

In granting Droomers summary judgment under § 523(a)(6), Judge Rhodes applied the doctrine of collateral estoppel to the state court criminal contempt proceedings, finding: (1) there is an identity of the parties in the state court proceedings and bankruptcy court proceedings because debtors Musilli and Baumgardner were shareholders of the Firm that was subject to the December 20, 2002 state court escrow order, and they were each found in contempt of that order; (2) the criminal contempt order is a valid and final state court judgment; (3) the bankruptcy issue of "wilful and malicious injury by the debtor" to the "property of another" was actually and necessarily determined in state court; and (4) Musilli and Baumgardner were given a full and fair opportunity to litigate the issue in state court. Judge Rhodes determined that "[t]he record establishes that Musilli and Baumgardner knew that their violation of the court order and the transferring of the assets of [the Firm] to themselves and others would injure Droomers." December 26, 2007 Opinion, at 9.

11 U.S.C. § 727(a)(2) and (7) provide:

(a) The court shall grant the debtor a discharge, unless—

* * *

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed,—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

* * *

(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider[.]

Judge Rhodes held that § 727(a)(7) makes an individual debtor liable to the extent he engages in § 727(a)(2) conduct on behalf of an "insider," citing *Barclays/American Business Credit, Inc. v. Adams*, 171 B.R. 298, 302 (W.D.Tenn.1992). Judge Rhodes found that Musilli and Baumgardner, as partners of the Firm, were "insiders" to the Firm's predecessor Shores Legal Services, and that Musilli and Baumgardner transferred and concealed assets within one year before Shores Legal Services filed for bankruptcy protection in 2003, all with the intent to hinder, delay, or defraud Droomers as described in the state court's December 14, 2003 and December 14, 2005 Orders.

## II. Analysis

■■■ On appeal, a federal district court is bound by the bankruptcy court's findings of fact unless they are clearly erroneous. *Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 88 (6th Cir. 1993) (citing Bankruptcy Rule 8013). The bankruptcy court's legal conclusions are

reviewed *de novo. Id.* A bankruptcy judge's grant of summary judgment is reviewed *de novo. Id.* at 88–89. Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) if the pleadings and record evidence demonstrate that there is no genuine issue of material fact for trial and that the moving party is entitled to judgment as a matter of law. *Redding v. St. Eward,* 241 F.3d 530, 532 (6th Cir.2001). The evidence and all reasonable inferences must be construed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Redding,* 241 F.3d at 532 (6th Cir.2001). Summary judgment is warranted if the evidence "is so one-sided that one party must prevail as a matter of law.' " *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir.2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## A. Droomers' Motion to Supplement the Record

Appellee Droomers attached 17 exhibits to her August 31, 2008 appellate brief. Appellants Musilli and Baumgardner argue that only five of the attachments (Nos. 3, 9, 12, 13, and 16) were designated as part of the record on appeal. Droomers moves for leave to supplement the record.

Attachment No. 1 is a copy of the Michigan Court of Appeals decision *Droomers v. Parnell,* No. 253455, 2005 WL 1540486 (Mich.Ct.App. June 30, 2005) (unpublished). Attachment No. 2 is a copy of Judge Cox's Opinion dismissing Musilli's and Baumgardner's federal claims. Attachment No. 4 is a copy of a partial transcript of a December 16, 2003 show cause hearing before Judge Mester. Attachment No. 5 is a copy of Judge Mes-

ter's December 14, 2005 Order and Judgment entering judgment against Musilli and Baumgardner in the amount of $431,350.00 plus costs and fees in the amount of $16,872.83. Attachment No. 6 is a copy of a "SETTLEMENT AND RELEASE AGREEMENT" executed by Musilli, Baumgardner, and Barbara Droomers. Attachment No. 7 is a copy of a transcript of a May 16, 2007 hearing before Judge Mester. Attachment No. 8 is a copy of a transcript of a May 16, 2007 hearing before state court Judge Wendy Potts. Attachment No. 11 is a copy of a May 16, 2007 Order issued by Judge Mester ordering Musilli and Baumgardner to report to the Oakland County Jail within 72 hours. Attachment No. 14 is a copy of an April 16, 2008 Order issued by Judge Mester further reinstating the $431,350.00 judgment of contempt against Baumgardner. Attachment No. 15 is a copy of Judge Rhodes' May 21, 2008 judgment. Attachment No. 17 is a copy of a partial transcript of May 22, 2003 proceedings before Judge Mester.

 "The record on appeal shall include the items so designated by the parties, the notice of appeal, the judgment, order, or decree appealed from, and any opinion, findings of fact, and conclusions of law of the [bankruptcy] court." Bankruptcy Rule 8006. A district court is authorized to supplement the record in a bankruptcy appeal, and to take judicial notice of appropriate evidence. *In re Hamady Brothers Food Markets,* 110 B.R. 815, 817 (E.D.Mich.1990) (citing *Huddleston v. Nelson Bunker Hunt Trust Estate,* 102 B.R. 71 (N.D.Tex.1989)). Judicial notice may be taken at any stage in a proceeding. Fed.R.Evid. 201(f). Federal courts may take judicial notice of proceedings before other federal courts and state courts of record. *Granader v. Public Bank,* 417 F.2d 75, 82–83 (6th Cir.1969).

■ All but Attachment 6 are copies of proceedings before the Bankruptcy Court, Oakland County Circuit Court Judges Mester and Potts, the Michigan Court of Appeals, and the Federal District Court for the Eastern District of Michigan. Attachment No. 15, a copy of Bankruptcy Judge Rhodes' May 21, 2008 judgment, was appropriately included in Musilli's and Baumgardner's designation of the record. Bankruptcy Rule 8006. Judge Rhodes reviewed the entirety of the Michigan state court proceedings, as evidenced by the original designation of record which included *inter alia* a copy of *Droomers v. Parnell*, No. 253455, 2005 WL 1540486 (Mich. Ct.App. June 30, 2005) (unpublished) as Item No. 1 (Attachment No. 1) and a partial transcript of a December 16, 2003 show cause hearing before Judge Mester as Item No. 3 (Attachment No. 4). Attachment No. 6, a copy of a "SETTLEMENT AND RELEASE AGREEMENT," was also included in the original designation of record as Item No. 8. Reviewing Droomers' proffered Attachments in light of the original designation of record, the requirements of Rule 8006, and the court's authority to supplement the record and take judicial notice of proceedings in other courts of record, Droomers' motion for leave to supplement the record will be granted. *In re Hamady Brothers*, 110 B.R. at 817; *Granader*, 417 F.2d at 82–83.

### B. Lifting of Automatic Stay

■ At the outset, Musilli's and Baumgardner's argument that the Bankruptcy Court erred by lifting automatic stays arising under 11 U.S.C. § 362 and allowing the state court contempt proceedings to continue is without merit. 11 U.S.C. § 362(b)(1) expressly provides that the automatic stay provision of § 362(a)(1) "does not operate as a stay—... of the commencement or continuation of a crimi-

nal action or proceeding against the debtor." Contempt proceedings to "uphold the dignity of the court" and enforce a court's orders are not subject to the automatic stay provisions of § 362. *N.L.R.B. v. Sawulski*, 158 B.R. 971, 976–77 (E.D.Mich. 1993). On *de novo* review, the Bankruptcy Court did not err by issuing its orders permitting the continuation of the state court criminal contempt proceedings. *Investors Credit Corp.*, 995 F.2d at 88.

### C. Collateral Estoppel and § 523(a)(6)

Musilli and Baumgardner argue the Bankruptcy Judge erred in applying the doctrine of collateral estoppel because the Oakland County Circuit Court, acting through Judge Mester, was the "party" to the contempt proceeding, not Attorney Droomers. Musilli and Baumgardner also argue collateral estoppel does not apply because the § 523(a)(6) issues of "willful and malicious injury ... to the property of another entity" were not adjudicated in state court. Appellants continue that Droomers had no "property" subject to injury under § 523(a)(6) when the state court entered its December 20, 2002 escrow order because the paid contingency fee was "long gone" by then. Appellants argue the Bankruptcy Court erred by finding that Musilli and Baumgardner even knew Attorney Droomers was making a claim for a referral fee, and assert there was never an evidentiary hearing in state court to determine the amount of damages. Musilli and Baumgardner contend the order of contempt was premised on a violation of Michigan's UFTA, and is therefore not a state court money judgment.

■ Collateral estoppel may be applied in nondischargeability proceedings under the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, 284–85, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). "A finding in

a prior criminal proceeding may estop an individual from relitigating the same issue in a subsequent civil action." *Hinchman v. Moore*, 312 F.3d 198, 202 (6th Cir.2003) (citing *Emich v. Gen. Motors Corp.*, 340 U.S. 558, 568–69, 71 S.Ct. 408, 95 L.Ed. 534 (1951)). Federal courts give state court judgments the same preclusive effect they would have under the law of the State in which the judgment was rendered. *Hinchman*, 312 F.3d at 202 (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)). Under Michigan law, collateral estoppel applies when: (1) there is an identity of parties across the proceedings; (2) a valid and final judgment was entered in the first proceeding; (3) the same issue was actually litigated and necessarily determined in the first proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding. *Hinchman*, 312 F.3d at 202 (quoting *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir.2001)). For purposes of collateral estoppel, a "party" is "one who is 'directly interested in the subject matter, and had a right to make defense, or to control the proceeding, and to appeal from the judgment.'" *Howell v. Vito's Trucking and Excavating Co.*, 386 Mich. 37, 43, 191 N.W.2d 313 (1971).

■ Attorney Droomers, not Judge Mester or the Oakland County Circuit Court, was the one directly interested in the subject matter of the $352,636.60 being paid into escrow as ordered on December 20, 2002, and in securing and reinstating the December 14, 2005 state court contempt judgment of $431,350.00 against Musilli and Baumgardner. Attorney Droomers had the right under M.C.R. 3.606(A)(1) to initiate the contempt proceeding by moving for a court order requiring Musilli and Baumgardner to show cause why they should not be held in contempt of court for failing to obey the December 20, 2002 show cause order. *DeGeorge v. Warheit*, 276 Mich.App. 587, 741 N.W.2d 384 (2007). Attorney Droomers invoked his rights under the UFTA. Attorney Droomers, not the Oakland County Circuit Court, had the right of appeal, and appeared before the Michigan Court of Appeals as the appellee. Attorney Droomers was a "party" to the contempt proceedings, as were Musilli and Baumgardner. *Howell*, 386 Mich. at 43, 191 N.W.2d 313. Construing the pleadings and evidence in a light most favorable to Musilli and Baumgardner, there is an identity of parties across the state court proceedings and Bankruptcy Court adversary proceeding for purposes of collateral estoppel. *Hinchman*, 312 F.3d at 202; *Matsushita Elec.*, 475 U.S. at 587, 106 S.Ct. 1348.

■ A "wilful and malicious injury" under § 523(a)(6) occurs where "the actor desires to cause consequences of his act, or ... believes that the consequences are substantially certain to result from it." *In re Markowitz*, 190 F.3d 455, 464 (6th Cir. 1999) (quoting Restatement (Second) of Torts § 8A, at 15 (1964)). "The violation of a court order that results in an order of contempt has been found to satisfy the willful and malicious requirements of § 523(a)(6)." *In re Rosenberg*, No. 05–23111, 2007 WL 2156282, *4 (Bankr. N.D.Ohio July 23, 2007) (citing *Siemer v. Nangle (In re Nangle)*, 274 F.3d 481, 484 (8th Cir.2001); *Heyne v. Heyne, (In re Heyne)*, 277 B.R. 364, 369 (Bankr. N.D.Ohio 2002); *Bundy American Corp. v. Blankfort*, 217 B.R. 138, 145 (Bankr. S.D.N.Y.1998); *Buffalo Gyn Womenservices, Inc. v. Behn*, 242 B.R. 229, 238 (Bankr.S.D.N.Y.1999); *Haeske v. Arlington (In re Arlington)*, 192 B.R. 494 (Bankr.N.D.Ill.1996); *Shteysel v. Shteysel (In re Shteysel)*, 221 B.R. 486 (Bankr.

E.D.Wis.1998)). The Michigan Court of Appeals affirmed Judge Mester's rulings that "there was a flagrant violation of the [c]ourt's orders," that "[t]here's never been an attempt, I'm satisfied, to comply with these [c]ourt orders," and that Musilli and Baumgardner "simply disobeyed the court's order because they believed the order was unjustified." *Droomers,* No. 253455, 2005 WL 1540486 at **3–4, 8. Upon his finding of criminal contempt, Judge Mester was authorized by Michigan law to order Musilli and Baumgardner to pay "a sufficient sum" for their "misconduct" which "caused an actual loss to any person[.]" M.C.L. § 600.1721. Judge Mester found in his December 14, 2005 Order that "Plaintiff [Droomers] was damaged in the amount of $431,350 by the contempt of Ralph Musilli and Walter Baumgardner." *In re Saylor,* 108 F.3d 219 (9th Cir.1997), relied upon by the appellants, is distinguishable as not involving the violation of a court order and resulting order of criminal contempt. Although Attorney Droomers invoked rights under the UFTA to secure the December 20, 2002 escrow order, the $431,350.00 judgment is premised on an adjudication of criminal contempt arising from the appellants' disobedience of the escrow order, not Droomers' rights under the UFTA. Construing the evidence in a light most favorable to Musilli and Baumgardner, the state court's determination that Musilli's and Baumgardner's misconduct of flagrantly violating the December 20, 2002 escrow order caused Droomers to incur $431,350.00 in damages satisfies the wilful and malicious injury to property requirement of § 523(a)(6) as a matter of law. *In re Markowitz,* 190 F.3d at 464; *In re Rosenberg,* 2007 WL 2156282 at *4 (and cases cited therein); *Matsushita Elec.,* 475 U.S. at 587, 106 S.Ct. 1348.

Musilli's and Baumgardner's arguments that Droomers had no property right subject to injury, that they did not know Droomers was making a referral fee claim, and that the state court did not hold an evidentiary hearing to determine the damages amount, challenge the merits of the judgment debt. "The dischargeability of a debt must be recognized as a matter separate from the merits of the debt itself." *In re Sweeney,* 276 B.R. 186, 195 (6th Cir.BAP2002). Pursuant to the *Rooker–Feldman* doctrine, "a bankruptcy court may not review and redetermine the merits of a debt or set aside the ... judgment reflecting it, but it may within its exclusive jurisdiction determine whether that debt is dischargeable or not." This court is precluded by the *Rooker–Feldman* doctrine from redetermining whether the judgment amount of $431,350.00 is properly supported under Michigan procedural and substantive law. *In re Sweeney,* 276 B.R. at 195. For purposes of applying collateral estoppel, it is beyond reasonable dispute that the same issue of wilful and malicious injury to Droomers' property interest was actually litigated and necessarily determined in the first state court proceeding. *Hinchman,* 312 F.3d at 202; *Matsushita Elec.,* 475 U.S. at 587, 106 S.Ct. 1348.

The record of the state court proceedings also demonstrates beyond reasonable dispute that Musilli and Baumgardner were given a full and fair opportunity to litigate the legitimacy of the state court judgment debt before Judge Mester and the Michigan Court of Appeals. *See Droomers,* No. 253455 2005 WL 1540486, at *8 (recognizing that the proceedings before Judge Mester "clearly provided Parnell, Musilli, and Baumgardner with the opportunity to defend themselves against the contempt proceedings. They had ample opportunity to present exculpatory evidence at the October 29, 2003, hearing and were given further time after that date to comply with the escrow order."). There is no dispute that Judge

Mester's December 14, 2005 contempt judgment of $431,350.00, and subsequent Orders reinstating the judgment, remain valid and final under Michigan law. Upon *de novo* review, and construing the evidence in a light most favorable to Musilli and Baumgardner, Droomers is entitled to summary judgment as a matter of law on her claim that the state court contempt judgment debt is not dischargeable under § 523(a)(6) by operation of the doctrine of collateral estoppel. *Investors Credit Corp.*, 995 F.2d at 88; *Hinchman*, 312 F.3d at 202; *Matsushita Elec.*, 475 U.S. at 587, 106 S.Ct. 1348; *Amway Distributors*, 323 F.3d at 390.

### D. § 727(a)(7)

Musilli and Baumgardner argue that the Bankruptcy Judge erred under § 727(a)(7) by finding that the appellants "acts" occurred within one year of filing bankruptcy, pointing out that they filed for bankruptcy protection in October 2006, well beyond one year after they were first found in contempt of court on October 29, 2003 for disobeying the December 20, 2002 escrow order.

■ Appellants misconstrue Droomers' theory of recovery under § 727(a)(7). Musilli and Baumgardner agreed at the September 3, 2008 hearing that the "act" of transferring property out of Shores Legal Services occurred within one year of Shores Legal Services filing for bankruptcy in late 2003. Musilli and Baumgardner are allegedly not entitled to discharge the state court judgment debt under § 727(a)(7) because they are "insiders" of debtor Shores Legal Services. As emphasized by Droomers' Counsel at the hearing, § 727(a)(2) speaks to the debtor's acts committed within one year of that same debtor's date of filing a petition for bankruptcy, while § 727(a)(7) speaks to the debtor's acts committed within one year "before the date of the filing of the peti-

tion, or during the case, *in connection with another case*, under this title or under the Bankruptcy Act"—Shores Legal Services' 2003 bankruptcy petition—"concerning an insider." As persons who acted on behalf of Shores Legal Services in transferring property "with intent to hinder, delay, or defraud" Droomers within one year of Shores Legal Services's bankruptcy petition, Musilli and Baumgardner are not entitled to a discharge of the state court judgment by operation of § 727(a)(7). *Barclays/American Business Credit, Inc.*, 171 B.R. at 303. Upon *de novo* review, Droomers is entitled to summary judgment of the § 727(a)(7) claim as a matter of law. *Id.; Investors Credit Corp.*, 995 F.2d at 88; *Matsushita Elec.*, 475 U.S. at 587, 106 S.Ct. 1348; *Amway Distributors*, 323 F.3d at 390.

### III. Conclusion

Appellant Droomer's motion for leave to supplement the record is hereby GRANTED. Consistent with the analysis herein, the Bankruptcy Court's December 26, 2007 Opinion is hereby AFFIRMED.

SO ORDERED.