NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0339n.06

No. 08-2572

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jun 03, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| In re: RALPH MUSILLI and WALTER BAUMGARDNER, | ) ) ) | |
| Debtors. | ) ) | |
| RALPH MUSILLI and WALTER BAUMGARDNER, | ) ) ) ) | **ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN** |
| Appellants, | ) ) | |
| v. | ) ) | |
| BARBARA DROOMERS, | ) ) | |
| Appellee. | ) ) | |

Before: MARTIN and GIBBONS, Circuit Judges; MARBLEY, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Debtors–appellants Ralph Musilli and Walter Baumgardner seek the discharge of their debt to plaintiff–appellee Barbara Droomers for a judgment awarded to Droomers for Musilli and Baumgardner's contempt of court. Droomers claimed that (1) Musilli and Baumgardner should be denied discharge under 11 U.S.C. § 727(a)(7) for their obstructionist transfer of funds; and (2) the debt should be nondischargeable under 11 U.S.C. § 523(a)(6) because it was due to a willful and malicious injury caused by the debtors. The

---

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

bankruptcy court agreed with Droomers on both issues, and the district court affirmed. Although

our analysis differs from that of the bankruptcy court, we affirm.

I.

Attorneys Ralph Musilli and Walter Baumgardner were two of the four shareholders of the

law firm Musilli, Baumgardner, Wagner & Parnell, P.C.. In 1999, the firm received a fee of over

$1 million in connection with its representation of plaintiffs in a suit against General Motors. On

July 25, 2000, Warren Droomers[1] filed a complaint in Michigan circuit court alleging, on a theory

of breach of contract, that because he had referred the GM case to the firm, the firm owed him a

referral fee of $352,636.60. On August 12, 2002, Droomers filed a first amended complaint adding

a separate count for relief under a theory of *quantum meruit*. During the course of this litigation,

Droomers filed a motion for relief under the Uniform Fraudulent Transfers Act ("UFTA"), Mich.

Comp. Laws § 566.31 *et seq.* Droomers asserted that because the firm had violated the UFTA by

failing to set aside his referral fee during litigation, and instead transferred the money to

shareholders, it would be difficult or impossible for him to collect on his claim. Droomers therefore

asked the court to require the firm to place the claimed funds in escrow pending resolution of the

suit. The court granted the motion on December 20, 2002, in an order enjoining the firm from

transferring any firm assets out of the corporation until it placed the full $352,636.60 in escrow. The

firm never escrowed the funds. Instead, the firm transferred money from the firm to its shareholders,

---

[1]Warren Droomers died during the pendency of the original state case. The state trial court ordered a party substitution so that the plaintiff became Barbara Droomers, as representative for the estate of Warren Droomers.

including approximately $97,000 to Musilli, Baumgardner, and a third partner, John Parnell. Neither the firm nor the individual partners sought leave from the court before doing so.

After a bench trial ending in May 2003, the state court found against Droomers on her referral fee claim but for Droomers on her claim in *quantum meruit*, and awarded her $240,000 plus costs and interest, for a total of $312,297.40. On October 10, 2003, Droomers filed an "ex parte motion for order to show cause why [the firm] and its agents, officers and attorneys Ralph Musilli, Walter Baumgardner and John Parnell should not be held in contempt for failing to comply with the court's [order requiring the escrow account]." On December 4, 2003, the state court found appellants Musilli and Baumgardner in contempt of court and ordered them to appear on December 17, 2003, for a show cause hearing and a determination of the fines and damages caused by their contempt. The court ruled at the hearing that the appellants "flagrantly violated" the court's December 2002 order, which had bound both the firm and the individual shareholders, and reiterated the findings of contempt. In a written order, the court also sentenced the appellants to thirty days in jail. The same day of the hearing, which was actually held on December 16, 2003, the firm filed a bankruptcy proceeding and later liquidated its assets and changed its name to Shores Legal Services.

The appellants appealed the contempt order. The Michigan Court of Appeals affirmed but remanded the case to the state circuit court for a determination of whether the contempt was civil or criminal. *Droomers v. Parnell*, No. 253455, 2005 WL 1540486, at *7 (Mich. Ct. App. June 30, 2005). On remand, the state court ruled that the appellants were in criminal contempt and ordered the appellants to pay Droomers $431,350, which was the amount of the original judgment plus

interest, and costs and fees of $16,872.83. It further ordered the appellants to report to jail to serve their thirty-day sentence on February 1, 2006.

On February 28, 2006, however, the appellants entered into a settlement agreement with Droomers. Droomers agreed to have the state court dismiss with prejudice the criminal contempt charge, drop her lawsuit against the appellants, and notify the bankruptcy court of the dismissals. In exchange, appellants Musilli and Baumgardner agreed that they would each pay Droomers $100,000. Droomers performed her side of the agreement, and all claims against the appellants were dismissed. Instead of remitting payment to Droomers, however, the appellants filed suit in federal district court against Droomers and the state court judge, alleging extortion and asserting a claim under 42 U.S.C. § 1983. On October 23, 2006, the district court dismissed the lawsuit as frivolous and awarded sanctions against the appellants. The state court then reinstated the contempt judgment in full against Musilli and Baumgardner. The appellants appealed the reinstatement, and the Michigan Court of Appeals again affirmed. *Droomers v. Parnell*, No. 278162, 2009 WL 348839, at *1 (Mich. Ct. App. Feb. 12, 2009).

On October 31, 2006, Musilli filed a bankruptcy proceeding; Baumgardner did the same on December 11, 2006. Droomers then filed an adversary proceeding in the bankruptcy court, seeking a denial of the appellants' discharges under 11 U.S.C. § 727(a)(7) and a determination that the contempt debt owed her was nondischargeable under 11 U.S.C. § 523(a)(6).[2] After denying the

---

[2]Droomers also claimed the debt was nondischargeable under subsections (a)(4) and (a)(7), but those issues are not presented on appeal.

appellants' motion to dismiss, the bankruptcy court turned to a motion for summary judgment filed by Droomers.

The court first considered whether a finding of nondischargeability of the debt under § 523(a)(6), which prohibits discharge for any debts caused by "willful and malicious injury," was compelled by collateral estoppel. Although the court discussed the applicability of collateral estoppel at some length, it apparently never reached a conclusion on that point. Rather, the court determined that the debt was not dischargeable because the requirements of § 523(a)(6) were met and thus granted summary judgment for Droomers on that basis. The bankruptcy court found that the Michigan courts held that the appellants' transfer of funds from the firm was in "willful disregard or disobedience of a court order" and that the contempt of court had directly damaged Droomers. Further, it found that "[t]he record establishes that Musilli and Baumgardner knew that their violation of the court order and the transferring of the assets of [the firm] to themselves and others would injure Droomers." The bankruptcy court then granted Droomers summary judgment on the § 727(a)(7) issue, finding that the appellants had "with the intent to hinder, delay or defraud [Droomers], transferred and concealed the assets of Shores Legal Services within the year prior to the filing of Shores Legal Services' bankruptcy petition." Because Musilli and Baumgardner were "insiders" with the firm, they were therefore not entitled to discharges.

Musilli and Baumgardner appealed the bankruptcy court's ruling to the district court. *In re Musilli*, 398 B.R. 447, 450 (E.D. Mich. 2008). In a November 25, 2008, opinion, after disposing of two issues not before us, the court upheld the bankruptcy court's grant of summary judgment for Droomers on the § 523 claim. *Id.* at 454–56. Similar to the bankruptcy court, the district court

started an analysis of whether collateral estoppel applied but did not seem to finish it. On the element of actually litigated and necessarily determined, the court concluded that "the state court's determination that Musilli's and Baumgardner's misconduct of flagrantly violating the December 20, 2002 escrow order caused Droomers to incur $431,350.00 in damages satisfies the wilful and malicious injury to property requirement of § 523(a)(6) as a matter of law." *Id.* at 456. This determination appears to be on the merits of § 523(a)(6). Nonetheless, the court also said that collateral estoppel applied. *Id.* at 457. The district court also found that the appellants' other arguments—that Droomers had no property right subject to injury, that they did not know Droomers was making a referral fee claim, and that the state court did not hold an evidentiary hearing to determine the amount of damages—were barred by the *Rooker-Feldman* doctrine because they were attempts to relitigate the merits of the debt itself. *Id.* at 456. Finally, the district court found that the appellants were not entitled to discharges because they had transferred property "with intent to hinder, delay, or defraud" Droomers within one year of the firm filing bankruptcy, in contravention of § 727(a)(7), thus affirming the bankruptcy court. *Id.* at 457. Musilli and Baumgardner timely appealed.

## II.

"[W]e directly review the bankruptcy court's decision rather than the district court's review of the bankruptcy court's decision." *Barlow v. M.J. Waterman & Assocs., Inc. (In re M.J. Waterman & Assocs., Inc.)*, 227 F.3d 604, 607 (6th Cir. 2000) (citation omitted). Under this formulation, we "review the bankruptcy court's conclusions of law *de novo*, while we review its factual findings for clear error." *Id.* (citation omitted). In reviewing the bankruptcy court's factual findings, "[a] factual

finding will only be clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280 (6th Cir. 1998) (citing *United States v. Ayen*, 997 F.2d 1150, 1152 (6th Cir. 1993)).

We review the grant of summary judgment *de novo*. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389 (6th Cir. 2008); *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (*en banc*). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must review all the evidence, facts, and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

III.

Section 523(a) of the Bankruptcy Code enumerates certain debts that are not dischargeable in bankruptcy, even if the debtor is eligible for a discharge under 11 U.S.C. § 727. *See* 11 U.S.C. § 523. Included in that list are debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." *Id.* § 523(a)(6). For the discharge exception under § 523(a)(6) to apply, a debtor must: (1) "will or desire harm[;]" or (2) "believe injury is substantially certain to occur as a result of his behavior." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 465 n.10

(6th Cir. 1999). The Supreme Court has said that "nondischargeability [under this subsection] takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S 57, 61 (1998). This court has created a non-exclusive list of the "types of misconduct [that] satisfy the willful and malicious injury standard: intentional infliction of emotional distress, malicious prosecution, conversion, assault, false arrest, intentional libel, and deliberately vandalizing the creditor's premises." *Steier v. Best (In re Best)*, 109 F. App'x 1, 5 & n.2 (6th Cir. 2004) (collecting cases). "[T]he injury must invade the creditor's legal rights . . . 'in the technical sense, not simply harm to a person.'" *Id.* at 6 (citing *In re Geiger*, 113 F.3d 848, 852 (8th Cir. 1997), *aff'd*, 523 U.S. 57 (1998)).

Droomers argues that we should affirm the bankruptcy court's grant of summary judgment on this issue on collateral estoppel grounds. According to Droomers and the bankruptcy court, a finding of willful and malicious injury was actually litigated and necessarily decided by the state court when it found the appellants in contempt. Although there is some question whether collateral estoppel applies, we nonetheless affirm the judgment of the bankruptcy court because, on the merits, it is clear that the actions taken by Musilli and Baumgardner that led to their being held in contempt by the state court constitute willful and malicious injury.

Although we have never decided whether a debt resulting from contempt is willful and malicious *per se*, we have considered a closely analogous situation. In *Phipps v. Commonwealth of Kentucky Natural Resources & Environmental Protection Cabinet*, Phipps was ordered by the Commonwealth to cease illegal mining activities on his father's property and begin reclamation. 980 F.2d 730 (Table), 1992 WL 358480, at *1 (6th Cir. Dec. 3, 1992). When he did not comply, and

8

failed to comply with an ensuing permanent injunction, the state court held him in contempt and sentenced him to 12 months imprisonment. *Id.* On appeal, we affirmed the district court's finding that Phipps's debt to the Commonwealth was nondischargeable under § 523(a)(6). *Id.* at *3. Phipps's conduct had been "willful and malicious" because he "knowingly continued to engage in illegal mining . . . after being ordered to cease and desist . . . [and because he] knowingly refused to begin reclamation of the mining sites in violation of the state court's injunctive orders." *Id.* Although Phipps's debt arose from his failure to commence reclamation, not from a contempt judgment, we find the case's reasoning persuasive because Phipps's willful conduct led independently to both the debt and the contempt.

Other courts uniformly have held that a contempt penalty constitutes a nondischargeable willful-and-malicious injury under § 523(a)(6). *See, e.g.*, *Siemer v. Nangle (In re Nangle)*, 274 F.3d 481, 484 (8th Cir. 2001) (finding that a debtor's conduct in disobeying a court order was "willful," and his "conduct was malicious because it was 'targeted at the creditor . . at least in the sense that the conduct is certain or almost certain to cause . . . harm.'" (quoting *Barclays American/Business Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 881 (8th Cir. 1985))); *Williams v. Int'l Brotherhood of Elec. Workers Local 520 (In re Williams)*, 337 F.3d 504, 511–13 (5th Cir. 2003) (holding that a contempt judgment resulting from the debtor's violation of an agreed judgment was nondischargeable under § 523(a)(6) because the judgment had "made him substantially certain that his acts would inflict injury" should he not comply with its directives).

We find that the court's escrow order made clear that "injury [wa]s substantially certain to occur" should Musilli and Baumgardner violate it. *In re Markowitz*, 190 F.3d at 465 n.10. Musilli

9

and Baumgardner point to no facts in the record that refute this finding. Despite having clear instructions from the court that the firm was to escrow funds sufficient to cover a judgment against it, Musilli and Baumgardner transferred all of the firm's assets away from the firm, including transferring a significant amount of money to themselves. The appellants directly violated the court order and have offered no legitimate justification that might explain why their actions were not willful and malicious. Therefore, we affirm the bankruptcy court's grant of summary judgment for Droomers on her claim that the debt is nondischargeable under § 523(a)(6).

Because the only debt at issue in this case is the debt resulting from the contempt judgment in the state court, our decision that the debt is nondischargeable resolves the only live issue in the adversary proceeding. Therefore, we need not decide whether Musilli and Baumgardner are entitled to discharges under § 727(a)(7).

IV.

For the reasons set forth above, we affirm the bankruptcy court's finding of nondischargeability of the debt based on the applicability of 11 U.S.C. § 523(a)(6) and remand for further proceedings.