NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0999n.06

No. 12-1894

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 25, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ZIHRA SAAD and JOSEPH SAAD, | ) | |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SCOTT KELLER, CARRIE CATES, GREG GONDEK, JERRY SKELTON, and NASON, Reserve Officer, | ) ) ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Defendants-Appellants, | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| CITY OF DEARBORN HEIGHTS, | ) | MICHIGAN |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Before: ROGERS, WHITE, and ALARCÓN,**[*] **Circuit Judges.**

**HELENE N. WHITE, Circuit Judge**. Defendants-Appellants are City of Dearborn Heights police officers (Officers) who challenge the district court's denial of their motion for summary judgment on grounds of immunity in this action alleging unlawful entry, unlawful arrest, and excessive force under 42 U.S.C. § 1983 and various state-law tort claims. We AFFIRM the denial of qualified and governmental immunity to Defendant Scott Keller. As to the remaining Defendants, we AFFIRM in part and REVERSE in part.

---

[*]The Honorable Arthur Alarcón, Senior United States Circuit Judge for the Ninth Circuit Court of Appeals, sitting by designation.

**I.**

Dearborn Heights Police Officer Scott Keller was dispatched to a residence to investigate a report of a harassing phone call on the evening of July 10, 2010. Officer Keller spoke to a Ms. Solak, who said that Joseph Saad (Saad), who lived down the street, had left a threatening message on her answering machine and had a history of leaving such messages. Officer Keller drove to the Saad home, knocked on the front door and, when Saad opened the door, asked Saad if he had left the message. Saad acknowledged that he had.

Saad's version of the ensuing events is that Officer Keller placed his foot inside the door as soon as Saad opened the front door. Officer Keller's version is that Saad became irate when asked for identification, shoved him backwards, and told him to get off the property. According to Officer Keller, Saad tried to slam the front door but could not because the deadbolt was engaged. Officer Keller claims that it was at that point that he placed his foot in the door's threshold.

Saad repeatedly tried to close the door but could not because Officer Keller refused to move his foot. Saad called out to his mother, Zihra Saad (Mrs. Saad), that the police were harassing him. Mrs. Saad came to the front door and began arguing with Officer Keller, who asked to see her identification.

The other Officers drove to the Saad home in response to Officer Keller's request for backup. Officer Cates testified that when she arrived, Officer Keller was standing in the doorway of the Saad home talking to the Saads. Officer Cates joined Officer Keller on the front porch and Officer Gondek and Reserve Officer Nason arrived within five minutes. Officer Cates testified that she left the porch to place a call to dispatch, and that Sergeant Skelton arrived and proceeded to the Saads'

front porch while she was in her vehicle. When Officer Cates rejoined the Officers, she was told that they were entering the home to arrest Saad.

Sergeant Skelton, the supervisor and ranking officer at the scene, testified that Reserve Officer Nason (not Officer Keller) told him that Saad had pushed Officer Keller. Sergeant Skelton testified that Officer Keller gave the command to enter the Saad home, i.e., that Officer Keller "gave the indication to everybody, it was like non-verbal communication, that ok, let's go. And he made the first step toward the [front] door." PageID 1670. Sergeant Skelton testified that he assumed that Officer Keller had a lawful basis to enter the Saad home and arrest Saad. Officer Keller entered the home first, followed by the other Officers and Sergeant Skelton.

The details of the Saads' arrests are disputed. Saad maintains that he did not resist arrest. He claims that when the Officers entered the home he backed up a few steps into the hallway, that two Officers came up behind him, and that Officer Keller immediately used a taser on him, before he could comply with the directive to place his arms behind his back. Saad maintains that Officer Keller tased him a second time, gratuitously, when he was already incapacitated, and that after he fell to the floor Officer Keller needlessly beat him and Officer Gondek punched him several times. Saad testified on deposition that Officer Gondek kept hitting and punching him while he was on the floor. Hospital records and photographs taken that evening confirm injuries to Saad's face and nose.

Officer Keller's version differs. He claims that when the Officers advised Saad that he was being arrested, Saad said he was not going anywhere and Mrs. Saad blocked the hallway with her arms to prevent Officer Keller from getting to Saad. When several other Officers grabbed Saad's arms, he pulled them away and resisted. Officer Keller advised Saad that he would be tased if he

did not comply, Saad refused to comply, and Keller tased Saad, who fell to the ground as other

Officers tried to handcuff him.[1]  Saad continued resisting and Officer Keller tased him again.  Saad

then stopped resisting and was handcuffed.

Regarding Mrs. Saad's arrest, Officer Cates claims that after Saad was tased, Mrs. Saad

became irate, screamed at Cates, grabbed her shirt collar, pushed her, and scratched at her neck in

order to get to Saad.  At that point, Officer Cates advised that she was going to arrest Mrs. Saad and

ordered her to place her hands behind her back.  Mrs. Saad turned away and crossed her arms across

her chest.  Officer Cates acknowledged using "a bit of force" to handcuff Mrs. Saad.

Mrs. Saad's account differs.  She claims that Officer Cates handcuffed her without talking

to her.  Mrs. Saad acknowledged struggling against being handcuffed but denied grabbing, pushing,

or scratching Officer Cates.  Mrs. Saad's affidavit states that Officer Cates applied the handcuffs too

tightly, that she complained they were causing her pain, and that the handcuffs bruised her wrists.

Mrs. Saad can be heard saying "my hands, my hands" on a recording of the incident and the video

of her booking shows her rubbing her wrists.

The Officers took the Saads outside for transport to the police station.[2]  The parties' accounts

differ here as well.  Mrs. Saad claims that Officer Cates shoved her toward the police car, that her

knees gave out, and that she fell to the ground.  Officer Cates testified that Mrs. Saad dropped to the

---

[1]The district court observed that Saad's claim that Officer Keller tased him *without warning* was not consistent with a recording of the incident, on which a male voice can be heard shouting "taser taser taser" while Saad and officers are yelling.  PageID 2100 n.2.

[2]The district court dismissed as contradicted by the record the Saads' excessive-force claims of being dragged to the police cars after arrest.  PageID 2100 n.2, 2112, 2114.

ground to resist being placed in the police car and that Cates helped her back to her feet.

Saad was transported in a separate police car. After booking, Saad complained of chest pains and was taken to a hospital. Mrs. Saad also complained of chest pains and was taken to a different hospital, where she was admitted and treated for a pre-existing heart condition. Officer Keller was treated for foot and ankle injuries.

Mrs. Saad was charged with resisting and obstructing a police officer, and Saad with assaulting, resisting, and obstructing a police officer. At the preliminary examination the charge against Mrs. Saad was dismissed, but Saad was bound over for trial in Wayne Circuit Court. At Saad's trial, the state court granted his motion for a directed verdict, concluding that due to inconsistencies in the Officers' testimony, a jury could not find him guilty beyond a reasonable doubt.

The Saads filed the instant action in federal district court against the individual Officers and the City of Dearborn Heights.[3] The district court denied the Officers' motion for summary judgment. In this interlocutory appeal, the Officers challenge the district court's denial of qualified immunity on the Saads' unlawful entry, unlawful arrest, and excessive-force claims brought under 42 U.S.C. § 1983 and the denial of governmental immunity on the Saads' state-law claims of false arrest, false imprisonment, malicious prosecution, assault and battery, and intentional infliction of emotional distress.

---

[3]The Saads stipulated to dismiss their state-law tort claims against the City. On the Officers' motion for summary judgment, the district court dismissed the Saads' *Monell* claims against the City, and dismissed conspiracy and gross-negligence claims against all Defendants.

## II. Collateral Estoppel

The Officers argue that the state-court decision to bind Saad over for trial on the charge of assaulting, resisting and obstructing a police officer collaterally estopped him from relitigating the probable cause issue in the instant suit. The district court properly rejected this claim.

### A.

In a case involving similar facts and applying Michigan law, this court analyzed whether collateral estoppel barred a plaintiff in a § 1983 action from relitigating the issue of probable cause:

> A finding in a prior criminal proceeding may estop an individual from relitigating the same issue in a subsequent civil action. *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568–69 [] (1951) (holding that "plaintiffs are entitled to introduce the prior judgment to establish prima facie all matters of fact and law necessarily decided by the conviction and the verdict on which it was based"). "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 [] (1984). Under Michigan law, collateral estoppel applies when
>
> > 1) there is identity of parties across the proceedings, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated and necessarily determined in the first proceeding, and 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.
>
> *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (citing *People v. Gates*, 452 N.W.2d 627, 630–31 (Mich. 1990)).
>
> The defendants argue that collateral estoppel bars Hinchman from relitigating the issue of probable cause because that exact issue was already determined by a state court judge at the preliminary hearing. Hinchman contends, however, that the issue in question here was not previously litigated. She maintains that the preliminary hearing concerned probable cause to arrest and prosecute her for felonious assault, while "the central issue [here] is whether the detectives ... supplied the prosecutor's office and the state court with a false version of the facts."

> The court's decision in *Darrah* . . . is controlling. It held that a finding of probable cause in a prior criminal proceeding does not bar a plaintiff in a subsequent civil action from maintaining a claim for malicious prosecution under Michigan law where the claim is based on a police officer's supplying false information to establish probable cause. *Darrah*, 255 F.3d at 311. The *Darrah* court followed the lead of an unpublished Sixth Circuit case, *Josey v. Salisbury*, [14 F.3d 601 (table disposition)] No. 92–2093, 1993 WL 476974 (6th Cir. Nov.18, 1993) ("In this action, the core issue is whether the officers misstated the facts to establish probable cause [;] at the preliminary hearing, the central question was whether there was probable cause. While the two inquiries are clearly related, they are not identical. Consequently, the identity of issues required for preclusive effect is absent here."). *Darrah*, 255 F.3d at 311.

*Hinchman v. Moore*, 312 F.3d 198, 202–03 (6th Cir. 2002).

Applying *Darrah* and *Hinchman*, the district court properly determined that the state court's decision did not preclude the Saads from contesting the issue of probable cause in this action.

**B.**

The Officers acknowledge that the district court correctly stated the law, but protest that Saad did not testify on deposition or at the preliminary examination that he did not shove or assault Officer Keller, and only so attested in an affidavit filed with a sur-reply brief filed in the district court in response to Defendants' summary-judgment motion.

Only Officers Cates and Keller testified at the preliminary examination. Officer Keller testified that Saad pushed him. Officer Cates, who was the first to arrive on the scene after Officer Keller, testified that Officer Keller at no time during the events in question told her that Saad had assaulted him. PageID 1074-75. The state court took note of this and asked Officer Cates, "And again, your testimony was that, you didn't know that Officer Keller had been assaulted, correct?" Officer Cates answered, "No, I did not." PageID 1093. At the conclusion of the hearing, the court

asked Saad's counsel:

> So you admit [] that if the Court found Officer Keller's testimony credible on the point that he was pushed, that the Court should bind over on a simple assaulting and resisting a police officer, not causing injury?
>
> [SAAD's COUNSEL]: I would say this, there would be other arguments that I would make if that was deemed to be credible at this point . . . , I would argue that, that he would have even had the right when someone's trying to enter his home to push somebody away that doesn't have a warrant. I think that anybody coming into your home without permission, you've got the right to stop them. **But I don't argue that because I don't believe that happened. I don't believe that Mr. Saad pushed anyone at anytime** [sic].
> . . . .
> THE COURT: As far as Mr. Saad, there was no testimony that the slamming of the door, which caused the injury [to Officer Keller] at the . . . Saad's house, was the assault. There was testimony and the testimony was clear that the assault was the push on the porch and that is a question of fact for a trier of fact so I will bind Mr. Saad over on the charge of assaulting, resisting, and obstructing a police officer.

PageID 1112 (emphasis added).

The district court cited this colloquy to support that Saad had challenged probable cause at the preliminary examination, PageID 2109, a determination with which we agree. The state court's questioning of Officer Cates reflects that whether the shove/assault of Officer Keller took place at all was in question. And, the only basis for probable cause the Officers asserted for arresting Saad was that he had shoved Officer Keller.[4] Accordingly, we affirm the district court's determination that collateral estoppel did not bar Saad's claims of unlawful entry and arrest. *See Hinchman,* 312 F.3d at 202–03; *see also Zulock v. Shures*, 441 F. App'x 294, 305 (6th Cir. 2010).

---

[4]Further, Saad testified that *he* did not commit a crime on the evening in question, that Officers committed the crime of tasing and beating him after entering the home without a warrant. Saad was not asked on deposition whether he shoved Officer Keller. His testimony is clear, however, that he denies Keller's version of events. PID 1442; PID 2037/J. Saad Affidavit.

### III. Section 1983 claims

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006). Review of a district court's denial of qualified immunity is *de novo*. *Carver v. City of Cincinnati*, 474 F.3d 283, 285 (6th Cir. 2007). Once an official raises the defense of qualified immunity, the burden is on the plaintiff to demonstrate that the defense is unwarranted. *Roth v. Guzman*, 650 F.3d 603, 609 (6th Cir. 2011). The facts as alleged must show that the defendant violated a constitutional right and that the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201(2001); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (allowing courts to decide which step in the qualified-immunity analysis to address first). A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

"[T]he rejection of a qualified-immunity claim is reviewable on interlocutory appeal only to the extent that it raises a question of law and does not concern a factual dispute." *Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, 700 F.3d 865, 871 (6th Cir. 2012) (citing *Floyd v. City of Detroit*, 518 F.3d 398, 404 (6th Cir. 2008)). This court has thus limited its review to the purely legal question whether the facts as alleged by the plaintiffs would allow a jury to find a violation of a clearly established constitutional right. *See Sutton*, 700 F.3d at 871; *see also Sample v. Bailey*, 409 F.3d 689, 695–96 (6th Cir. 2005).

**A.**

The Officers maintained below that their warrantless entry was justified because Saad had assaulted Officer Keller, a felony under Michigan law, and they were in hot pursuit of a fleeing felon. *See Stricker v. Cambridge Twp.*, 710 F.3d 350, 358 (6th Cir. 2013) (citing *Payton v. New York*, 445 U.S. 573, 586 (1980) (absent exigent circumstances, warrantless searches and seizures inside a home are presumptively unreasonable)). As the district court observed, Saad denied assaulting Officer Keller, thus under Saad's factual account there was no underlying felony and the warrantless entry was illegal. *See Stricker*, 710 F.3d at 358 (whether exigent circumstances exist is a jury question unless a fact finder could reach only one conclusion on undisputed facts).

Regarding Saad's unlawful arrest claim, the district court similarly denied the Officers summary judgment because Saad denied assaulting Officer Keller; if Saad is believed, there was not probable cause to arrest him.

**1. Unlawful Entry and Arrest - Officer Keller**

"[W]e are required by the limitations on interlocutory appeals of qualified immunity denials to accept the district court's finding that a genuine dispute of material fact existed." *Romo v. Largen*, 723 F.3d 670, 674 (6th Cir. 2013). We lack jurisdiction to review the district court's denial of qualified immunity to Officer Keller on the unlawful entry and arrest claim because he does not concede Saad's factual account on appeal and that account is not contradicted by the record. *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary

judgment"); *Romo*, 723 F.3d at 674 n.3.

## 2. Unlawful Entry and Arrest - Remaining Officers

Officer Cates, Officer Gondek and Reserve Officer Nason, all of junior rank to Officer Keller, arrived at the Saad home after Officer Keller and the events that purportedly prompted Officer Keller to request backup. Although the facts taken in the light most favorable to the Saads support that Officer Keller knew that the warantless entry and arrest was illegal, the dispositive inquiry to determine whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier*, 533 U.S. at 202. The Saads' response to the Officers' motion for summary judgment addressed only Officer Keller's conduct and version of the events. The Saads neither argued nor cited record evidence from which it could be inferred that it would have been clear to any of these junior Officers that the entry into the Saad home and Saad's arrest were unlawful, *see Pritchard v. Hamilton Twp. Bd. of Trustees*, 424 F. App'x 492, 499–504 (6th Cir. 2011) (analyzing each defendant police officer individually in order to determine entitlement to qualified immunity), or that these Officers had reason to question their superior Officer's directive to enter the Saad home and arrest Saad.

This leaves Sergeant Skelton, the ranking Officer, who was the last to arrive at the scene. Sergeant Skelton testified that Reserve Officer Nason told him that Saad had shoved Officer Keller. He testified that he assumed that Officer Keller had a legal basis to enter the home and that Saad's arrest was supported by probable cause. As with the junior Officers, the Saads neither argue nor cite record evidence to support that it would have been clear to Sergeant Skelton that entry into the Saad home and Saad's arrest were unlawful.

Under these circumstances, we reverse the denial of qualified immunity on the Saads' unlawful entry and arrest claims as to Officer Cates, Officer Gondek, Reserve Officer Nason, and Sergeant Skelton.

### 3. Excessive-Force Claims

We lack jurisdiction to entertain the district court's denial of qualified immunity for Officer Keller, Sergeant Skelton, and Reserve Officer Nason on Saad's excessive-force claim, and for Officer Cates on Mrs. Saad's excessive-force claim, because these Officers dispute the Saads' factual accounts and those accounts are not contradicted by the record. *See Scott*, 550 U.S. at 380.

The district court properly denied Officer Gondek qualified immunity given Saad's testimony that Gondek kept punching him after he was tased and had fallen to the floor.

### IV.  State-law Tort Claims

Under Michigan law, a defendant claiming immunity must show that his challenged acts were taken during the course of his employment and that he was acting or reasonably believed that he was acting within the scope of his authority, the challenged acts were taken in good faith or were not undertaken with malice, and the challenged acts were discretionary. *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 228 (Mich. 2008).

We agree with the district court that factual disputes precluded summary judgment on the question whether the Officers' acts were undertaken in good faith or absent malice. On the state-law immunity issues, the Officers rely solely on the presence of good faith, and do not otherwise question that the elements of the state torts are met. There is, however, sufficient evidence of bad faith to get to a jury with respect to the intentional tort claims of assault, battery, and intentional

infliction of emotional distress.

## V.

For the stated reasons, we AFFIRM the denial of qualified immunity to all Defendants on the Saads' § 1983 excessive force claims. On the Saads' § 1983 unlawful entry and arrest claims, we AFFIRM the denial of qualified immunity to Defendant Keller and REVERSE as to Officer Cates, Officer Gondek, Reserve Officer Nason, and Sergeant Skelton. On the state-law tort claims, we AFFIRM the denial of governmental immunity to all Defendants on the assault, battery, and intentional infliction of emotional distress claims, AFFIRM the denial of governmental immunity to Defendant Keller on the false arrest, false imprisonment, and malicious prosecution claims, and REVERSE the denial of governmental immunity to Officer Cates, Officer Gondek, Reserve Officer Nason, and Sergeant Skelton on the false arrest, false imprisonment, and malicious prosecution claims.